SARAH THORP

v.

JOHN W. GOEWEY, Admr.

1. PLEADINGS — *written, not required on appeal from refusal to allow claim against estate.* The statute does not require written pleadings where a claim is presented for allowance against an estate in the county court, and none are necessary on appeal from the judgment of that court, the trial being *de novo.*

2. EVIDENCE — *financial condition of party.* On the question of the genuineness of a promissory note presented as a claim against an estate, made many years before, evidence of the financial condition of the payee and holder of the note, at the date of the note and subsequently, is admissible in evidence on the part of the defense.

3. SAME — *pecuniary condition of supposed maker of note.* On an issue as to the fact of indebtedness of an intestate upon a promissory note outstanding a period of seventeen years, filed against his estate, the genuineness of which is disputed, it is competent for the defense to show in evidence that, from the date it purports to have been given down to the death of the deceased, he was prompt to pay his debts, was prudent, careful, credit good, was a man of large property, and did not like to be in debt, and that the payee, his son, was so pressed by his creditors, before the maker's death, as to take refuge in bankruptcy.

4. SAME — *res gestæ.* Where the payee of a note testified to the payment of money credited on the same, in support of its genuineness, which was disputed, and that the payment was made at a particular time and place, it was *held* competent, in rebuttal, to prove, by other witnesses present at the time and place, that no money was paid by the maker, and also what was said and done at that time and place, as a part of the *res gestæ*, but not what was said the previous night.

5. SAME — *to show note not genuine.* Where the genuineness of a promissory note, purporting to be from a father to his son, is disputed, evidence that the father signed his name in blank on a piece of paper to enable the son to raise money about the date of the supposed note, and which was never returned, is proper to go to the jury, whose province it is to say whether such signature was the one to the note in dispute.

6. In a suit upon a note, against the estate of the maker, where the genuineness of the note is disputed by the heirs, it is competent for the heirs to give in evidence the execution of notes secured by mortgage given by the payee to the maker, who was the payee's father, subsequent to the date of the note in suit, and the payment of money, from time to time, by

the son to the father, as establishing the improbability that during all such time he held a large note against his father.

7. Same—*admissions of payee of note.* Any declarations made by the payee of a promissory note, while owning the same, are proper evidence against a subsequent holder by delivery merely, but after sale and delivery, in good faith, any such declarations are not admissible except as impeaching testimony, where a proper foundation has been laid.

8. Attorney—*witness—privileged communication.* Facts obtained by one as an attorney at law, during negotiations, as to the amount of pay he should receive for his services to prosecute a suit, which resulted in no employment, for want of agreeing upon the fee to be paid, are privileged and inadmissible in evidence. Facts and circumstances communicated to an attorney or solicitor, when he is called upon, and acting as a legal adviser, are privileged.

9. Instruction — *should not be a mere argument.* It is erroneous to give an instruction which is more in the nature of an argument to the jury than a statement of the law governing the case—giving undue prominence to facts relied upon, and reciting facts having no tendency to support the theory presented.

Appeal from the Circuit Court of Winnebago county; the Hon. William Brown, Judge, presiding.

Mr. L. S. Swezey, and Mr. C. M. Brazee, for the appellant.

Messrs. Lathrop, Marshall & Taggart, for the appellee.

Mr. Justice Craig delivered the opinion of the Court:

The appellant, Sarah Thorp, filed in the county court of Winnebago county a note to be allowed against the estate of Peter D. Goewey, deceased, which reads as follows:

"$1900.

"One year after date, for value received, I promise to pay John W. Goewey, or bearer, $1900, with interest at ten per cent until paid.

"December 21, 1855.          Peter D. Goewey."

On the back of the note appears the following: "Paid on the within $100, January 11, 1867."

The county court, on motion, dismissed the claim, and an appeal was. taken to the circuit court, where, upon a trial

before a jury, a judgment was rendered against appellant, to reverse which she has appealed.

In the circuit court, certain issues were formed by pleas and replications, but we shall not stop to pass upon any question growing out of the pleadings. The statute does not require written pleadings where a claim is presented for allowance in the county court, and if an appeal is taken from the judgment of the county court, in the circuit court the trial is *de novo.* No written pleadings were, therefore, necessary or required to a proper disposition of the case.

A number of questions have been presented by appellant's counsel in regard to the decision of the court in admitting evidence. Such as are considered important will be examined.

The payee of the note was a son of the maker, and appellant is the mother in law of the payee, and for many years has been a member of his family. The note was never indorsed. The maker of the note died at Beloit, Wisconsin, August 30, 1872, and Roger H. Mills was, in the following October. appointed administrator of the estate by the county court of Rock county, Wisconsin, where the estate was fully settled. Over $7000 of assets came into the hands of the administrator, out of which, on a settlement of the estate, he distributed to the widow and heirs $1178.18 each. The claim involved in this case was never presented to that court for adjudication, nor was its existence ever made known to the administrator, although the payee of the note and appellant, who resided with him, were fully aware of the fact the estate was being settled in Wisconsin; but in November, 1872, the payee of the note presented a petition to the county court of Winnebago county for letters of administration, where the deceased, at the time of his death, owned a large and valuable farm, and, upon letters being granted, he filed the note in that court, as a claim against the estate. The heirs set up, as a defense, that no such indebtedness existed against Peter D. Goewey, in his lifetime; that the pretended note was never made by him, and

that the taking out of letters of administration and the presentation of the claim is a deliberate fraud.

It is claimed by appellant that the court erred in admitting evidence of the financial condition of the payee of the note, either on cross-examination or otherwise. We perceive no error in this. It is true, a person may be embarrassed and hard pressed for money to meet his engagements, and at the same time hold a heavy demand against another who is good and abundantly able to pay, and make no effort to collect the demand; but such is not usual, and it is not probable that the payee of the note would, under such circumstances, hold a demand of that character and make no effort to collect it. We think the testimony had a bearing on the question, and was competent for the consideration of the jury. In this connection, it is also claimed the court erred in admitting evidence of the pecuniary condition of the deceased. The proof showed that from 1855, when this note purported to have been given, down to the death of the deceased, he was prompt to pay his debts, prudent, careful, credit good, was a man of property, and did not like to be in debt. In 1865, he purchased a farm for $10,000. It is not reasonable to believe that a man with these habits of life, possessed of abundant means, would leave a note outstanding for a period of seventeen years, and that, too, due to a son, who was so pressed by his creditors that he was compelled to take refuge in bankruptcy. What weight should be given this character of evidence, it is not necessary to determine. It is sufficient to say, the testimony was proper for the consideration of the jury.

It is also claimed the court erred in the admission in evidence of what was said and done at Mills' office January 11, 1867. It will be remembered the credit on the note bears that date, but the defendant contends the deceased never made any payment on the note, or in any manner recognized it, while the payee testified the money was paid at this date, at Mills' office. The appellee, in rebuttal, called three witnesses, who testified to what occurred, and they all agree that no money was paid John on this occasion. It is claimed the money was paid in

the hall leading to Mills' office, where no person except the maker and payee of the note was present; but this theory is rendered improbable from the manner in which the deceased went into the office, and what occurred therein. We think all that was said and done, at the time the parties were at Mills' office, may be regarded as a part of the *res gestæ*, and admissible. What was said the previous night, perhaps, would not be admissible, but what was done in arranging funds to carry to Mr. Mills was proper to be stated.

The deposition of one Parsons, an attorney at law of Kansas City, who formerly resided at Beloit, was taken, in which he testified to statements made to him by John W. Goewey in regard to the note in question. It appears that Parsons was consulted as an attorney for the plaintiff in the action in regard to the collection of the note, but for some cause the parties failed to agree as to the fee Parsons was to receive for prosecuting the suit, and finally he was not employed. The facts he disclosed in his deposition were obtained as an attorney, and while negotiations were in progress as to the amount of pay he should receive for his services. These communications were privileged, and Parsons had no right to disclose them; and if he, in utter disregard of a professional obligation, saw proper to disclose confidential communications, it was the duty of the court to protect the client against the effect of such evidence. The law is well settled that facts and circumstances communicated to an attorney or solicitor, when he is called upon, and acting as a legal adviser, are not admissible in evidence. Greenleaf on Ev. sec. 237; *People* v. *Barker*, 56 Ill. 300. We are of opinion the motion entered by appellant to suppress this deposition should have prevailed.

The next point relied upon is, that the court erred in giving certain instructions on behalf of appellee. We perceive no ground upon which the fourth and seventh instructions can be sustained. They are more in the nature of an argument to the jury, giving prominence to the facts upon which appellee relied, than a statement of a principle of law applicable to the facts of the case. Besides, they announced to the jury if they

find certain enumerated facts to exist, then such facts would tend to prove that the note never was a valid claim, while a portion of the enumerated facts have no tendency whatever to prove whether the note was valid or invalid.

This kind of instructions has been condemned by a number of decisions of this court. They are so unfair, prejudicial, and so certain to mislead, that they can not be tolerated. The purpose of an instruction is to enlighten the jury on the law applicable to the facts of the case, by which they should be governed in their deliberations in the jury room, and thus assist them in their deliberations to arrive at a proper verdict. But these instructions had no tendency in that direction, but would be more likely to mislead. They should have been refused.

There is another portion of appellee's evidence, the admission of which appellant claims to be erroneous, which should be noticed. It appears that the deceased had sold a tract of land, consisting of 600 acres, to one Conger, at $20 per acre, and had received as payment $1000. John W. Goewey came from Ohio in December, 1855, where he then resided, and as the evidence shows, it was arranged between him and his father that the farm should be purchased back from Conger. To accomplish this, however, Conger required an advance of $2.50 per acre, which would amount to $1500, and the payment he had made of $1000, making $2500 which had to be paid to Conger. John W. Goewey agreed to take 300 acres of the land of his father, at $22.50 per acre. The arrangement was all consummated, but to carry it out $1900 of the money which was to be paid to Conger had to be borrowed. This was done by the deceased, and his son John agreed to raise that money when he returned to Ohio, and send it back to his father as a payment on the land. About the time the contracts had been executed, it then occurred to John that he might have to borrow the money when he returned to Ohio, and in that event he would need an indorser. To obviate this difficulty, his father wrote his name on a blank piece of paper, and gave it to his son to be filled up in Ohio, and used as a note, the son's

name to be signed as principal in case it was used, and the father as surety. This blank, with the name of the deceased signed to it, was taken away by John and was never returned.

The purpose of introducing this proof was to explain the manner that John obtained his father's signature to the note, the theory of the defense being that the son had written a promissory note for $1900 over the signature thus obtained, payable to himself. We perceive no objection to the evidence. The land contract executed at the same time, and the signature to the note, appear to have been written with the same kind of ink. The evidence is clear that the signature of the deceased was written on a piece of blank paper and delivered to the son. It was never returned, and it was a question for the jury to say whether that signature was the one to the note in question. If it was, of course no recovery could be had.

The land contract, notes and mortgage given by John W. to his father were objected to as incompetent testimony. In the spring of 1856, after the making of the contract in December, 1855, John W. moved out from Ohio, obtained a deed of the land, and gave his notes and mortgage, amounting to some $8000, the purchase price of the farm. These notes were payable annually. This evidence was proper for the jury. It is a singular fact, if true, that John W. would, from year to year, for several years, pay his father money on the land, if, at the same time, the father was indebted to him on a promissory note of $1900, and no effort whatever made to apply the note in payment; and it was proper to show the payment of money from time to time by John, for the purpose of establishing the improbability of the fact that all this time he held a large note against his father.

There is another class of testimony introduced on the trial by appellee, which is claimed to be erroneous, which should be noticed, and that is the declarations of John W. Goewey. Any declarations he may have made while he owned the note were proper to be proven; but if he at any time, in good faith, sold and delivered the note to appellant, what he may have said after that time would not be competent testimony except for

the purpose of impeaching his evidence where a proper foundation had been laid.

The judgment will be reversed and the cause remanded. Those defending on behalf of the estate will have leave to file an affidavit denying the execution of the note, if they see proper so to do.

*Judgment reversed.*