## A. T. Green, Plaintiff in Error, v. William H. Smith et al., Executors, Defendants in Error.

1. ADMINISTRATION OF ESTATES—*evidence as to claim.* In an action against the estate of a deceased person on a note for $6,000 purporting to be signed by him, it is not error to admit evidence as to decedent's financial condition and circumstances, that at the time he gave the note to plaintiff he held plaintiff's note for $3,000 which was past due, and that plaintiff paid interest to him and to the executors but received no interest on the $6,000 note.

2. ADMINISTRATION OF ESTATES—*evidence as to claim.* In an action on a note against the estate of the alleged maker two tax schedules of personal property sworn to by plaintiff, one made before and one after the note in question is alleged to have been given, in which the note was not listed are competent as admissions against plaintiff and tend to show that the note was neither in his possession or in existence.

3. APPEALS AND ERRORS—*saving questions.* Where the introduction of tax schedules of personal property in which a note on which action is brought was not listed by plaintiff is not objected to in the trial court on the ground that no proper foundation therefor was laid, the objection cannot be raised in the Appellate Court.

4. NEGOTIABLE INSTRUMENTS—*what instruction as to consideration correct.* An instruction in an action on a note is correct which informs the jury that the want of consideration destroys the validity of a note in the hands of the payee and if the jury believe from the evidence that the note was given without good or valuable consideration they should find for defendant.

5. NEGOTIABLE INSTRUMENTS—*when instruction as to consideration based on the evidence.* It cannot be said that an instruction in an action on a note is not based on the evidence where it informs the jury that if from the evidence they believe that the note was given without any consideration plaintiff could not recover and there is evidence that the note was given in lieu of land which the maker intended to give to his daughter who was plaintiff's wife.

6. INSTRUCTIONS—*when not error to refuse.* Where a plea sets up fraud and circumvention in an action on a note and there is no evidence on that question, it is not reversible error to refuse long and involved instructions telling the jury that there is no evidence on that issue though the jury should be so told.

Error to the Circuit Court of McDonough county; the Hon. HARRY M. WAGGONER, Judge, presiding. Heard in this court at the October term, 1912. Affirmed. Opinion filed March 18, 1913.

FLACK & LAWYER, for plaintiff in error.

ELTING & HAINLINE, for defendants in error; GIL-
BERT J. HAINLINE, of counsel.

MR. PRESIDING JUSTICE THOMPSON delivered the opin-
ion of the court.

This is an action of *assumpsit* brought by plaintiff
in error against defendants in error, executors of the
last will of Samuel Smith, deceased, on a promissory
note for $6,000, dated August 10, 1909, payable on de-
mand after date with interest at the rate of six per
cent. per annum payable annually, purporting to be
signed by Samuel Smith. Verified pleas of the gen-
eral issue, denying the execution of the note and a
want of consideration together with a plea of fraud
and circumvention were filed, upon which issues were
joined. A jury returned a verdict in favor of the de-
fendants on which the judgment was rendered and the
plaintiff has sued out a writ of error to review that
judgment.

The evidence shows that Samuel Smith died Feb-
ruary 2, 1911, leaving an estate of about $65,000, of
which $40,000 was in real estate and $25,000 in notes
and mortgages; at the time of his death he was 82
years of age and for many years his eye-sight was so
poor that when he wrote his name he would get his
face as close as possible to the paper. Plaintiff's first
wife was a daughter of Samuel Smith; she died Au-
gust 7, 1909. Smith furnished plaintiff with $100
with which to take his deceased wife to Effingham for
burial and on his return plaintiff gave Smith a receipt
dated August 10, 1909, for $100 stating that the ex-
penses amounted to $69 and that the balance was re-
turned to Smith; this writing signed by plaintiff was
found among Smith's papers.

The evidence in support of the execution of the note
was given by Bertha Luce, who is a sister of the
plaintiff's present wife, and was a clerk in plaintiff's

millinery store. She testified that Smith came into plaintiff's store on August 10, 1909, and said: "Is Mr. Green here? I would like to see him, I am ready to sign that note;" that Green, who was in the back part of the store got the note and Smith said we will go up in front so I can see to sign it, "you better draw a line here so I can see where to sign my name I am nearly blind;" that plaintiff had the note prepared before Smith came in; that there was nothing peculiar in the way he signed his name; that he was standing up when he signed it, and that he signed it just like any one else would.

Charles H. Green, a brother of plaintiff testified that in August, 1909, he saw Smith in plaintiff's barn that "my brother mentioned to him about his business, that they ought to get together and settle it up; Smith said "How much do you claim?" My brother said in the neighborhood of $6,600 or $6,500. He said "I think you have it a little high, how would $6,000 suit you?" to which my brother assented; that Smith then asked if he would be at the store to-morrow and plaintiff said "I can be at the store any time." And Smith said "to-morrow I will come down and we will try and get this thing in shape;" that there was nothing said about what it was for; there was no figuring done and there was nothing said either about a note outstanding between them or about Green owing Smith.

William Clark, a horse buyer and not related to any of the parties, testified that he asked Smith if he owed Green a note, he said "yes, I told him I was talking of selling a horse to Green and he said he owed him a $6,000 note;" that he never told Green about this conversation and never talked with Green's lawyer about it.

Proof for the defense was made by eight witnesses, business men, bankers and others who testified concerning Smith's manner of writing, that they had seen him write many times; that they knew the writing of

Smith and that the signature in question was not his signature.

W. H. Smith, a son of the deceased testified that in a conversation with the plaintiff after the death of the testator, he asked plaintiff how he came to have that note, and plaintiff replied that the deceased had once owned a piece of land which he had intended to give to plaintiff's first wife, the deceased's daughter; that Smith's second wife had induced him to sell this land and that the deceased gave him this $6,000 note to represent what he had intended his daughter, plaintiff's first wife to have in the land. The plaintiff, although a witness after this testimony was given, did not deny this conversation.

It is contended that the court erred in admitting in evidence testimony which showed that on August 10, 1909, the time the note in controversy was given, that Smith, the testator, held a note past due, executed by plaintiff for $3,000, dated March 1, 1901, bearing interest at six per cent. per annum, upon which the plaintiff paid interest annually up to the time of the death of the testator, and which he has since paid to the executors, and in permitting proof to be made as to the financial condition and circumstances of the testator.

This character of evidence in claims against the estates of deceased persons is held to be proper. *Thorp v. Goewey,* 85 Ill. 611. In the *Thorp* case, one of the issues was that the pretended note was never made by the deceased and the evidence of the kind here objected to was held proper for the consideration of the jury. In the case at bar, there was testimony offered by plaintiff tending to show there had been a settlement of the financial affairs of the parties and that the note in controversy was given on a settlement. The improbability of the testator giving a note for $6,000 when he held a note executed by the payee for $3,000, long past due, on which the payee thereafter paid interest and that the payee would hold a note for $6,000,

without the interest being paid, against the party holding the $3,000 note who collected his interest, were circumstances pertinent to the issue especially when the mouth of one of the parties was closed by death and the other by law. There was no error in admitting such evidence, and the weight to be given to it was a question for the jury.

It was also contended that the court erred in admitting in evidence two schedules of personal property made and sworn to by the plaintiff to the assessor of the city of Macomb. One schedule was made April 30, 1910, the other is April 16, 1911. These schedules show that all the assessable property the plaintiff had in that city in each of those years consisted of a clock, a sewing machine and some household goods of the aggregate value of $81 the last year and $93 the first year. The assessor also testified that he inquired of plaintiff if he had any notes and plaintiff replied that he had listed all he had. The schedules are admissions that plaintiff did not have the note he now claims to have had since August 10, 1909, and were competent evidence. 1 Ency. of Evidence, 363. If the note had been in existence at the time of the making of the schedules, but in some other parties hands, it was in the power of plaintiff to have shown such fact, and the fact that he did not list such a note tended to show it was neither in his possession nor in existence. While there are authorities holding such evidence to be incompetent, we hold that in reason it is competent as an admission against the party who made the schedules. Plaintiff now also contends that no proper foundation for the introduction of the schedules was laid by showing that he was a resident of Macomb, that objection was not made in the trial court and cannot be raised here for the first time.

Plaintiff also insists that there was error in giving the defendant's eighth instruction. The instruction informed the jury that the want of consideration destroys the validity of a note in the hands of the payee,

and if the jury believe from the evidence that the note was given without any good or valuable consideration they should find for the defendants. The objection is made that the instruction does not tell the jury that the fact of want of consideration must be found from a preponderance of the evidence. The instruction as given laid down a correct principle of law and did not omit an essential legal principle. If the jury from the evidence believe it to be a fact that there was no consideration for the note they could only arrive at such belief because they were impelled to it by the preponderance of the evidence, and they were told in other instructions on whom rested the burden of proving the several issues.

It is also contended that it was error to give the seventh instruction which informed the jury that if from the evidence, it believed that the note was given without any consideration and that it was a gift, the plaintiff could not recover. Plaintiff argues there was no evidence on which to base the instruction. There is evidence tending to prove that the note was given to plaintiff for land which the maker had intended to give his daughter, and having sold the land, that he gave the note to her surviving husband, the plaintiff, in lieu of the land.

Both parties requested instructions concerning fraud and circumvention. There was no evidence before the jury on that question and the court refused to give any instructions on that issue. The two instructions asked by plaintiff on that question are long and involved, one of them attempts to set forth the substance of the plea but varies from its averments; the other sets forth at considerable length the evidence in the case on other issues and then tells the jury there is no evidence in that issue. If the plaintiff had simply asked an instruction telling the jury there was no evidence on that issue the court would undoubtedly have given it. As we understand the rule,

if there is evidence to support some counts in a declaration, and there is no evidence to support other counts, it is not error to refuse instructions telling the jury that certain counts are withdrawn from their consideration. *Consolidated Coal Co. v. Scheiber,* 167 Ill. 539; *Swift & Co. v. Rutowski,* 182 Ill. 18; *Chicago & A. R. Co. v. Anderson,* 166 Ill. 572. The same rule is applicable to pleas. While the jury should have been told there was no evidence on that issue yet it was not reversible error to refuse the instructions as asked. Finding no reversible error in the case the judgment is affirmed.

*Affirmed.*