*In re* ESTATE OF FRANK RUDOLPH PETERSON.—(CAROL WILSON, Appellant, *v.* ILLINOIS NATIONAL BANK AND TRUST COMPANY, Conservator of the Estate of Frank Rudolph Peterson, Appellee.)

Second District    No. 81-80

Opinion filed February 4, 1982.

Peter B. Nolte, of Rockford, for appellant.

Frank P. Maggio, of Rockford (Pamela Fox, of counsel), for appellee.

JUSTICE VAN DEUSEN delivered the opinion of the court:

This is an appeal from a portion of an order closing a conservator's estate. The trial court ruled that the beneficiary of three "Totten Trust" accounts was not entitled to the interest earned on these accounts during the period of the settlor's incompetency where the interest was expended by the conservator for the upkeep and maintenance of the incompetent even though there were other cash assets of the incompetent from which those expenses might have been paid. Carol Wilson, the beneficiary of these accounts, has appealed.

During 1973, Frank Rudolph Peterson opened a savings account in each of the following Rockford, Illinois, institutions: Loves Park Savings & Loan Association, American National Bank & Trust Co., and First Federal Savings & Loan Association. All three accounts named Mr. Peterson as the trustee and his niece, Carol Wilson, as beneficiary of the accounts at his death.

On June 17, 1977, letters of office for conservator to collect for the estate of Frank Rudolph Peterson, incompetent, were issued to the Illinois National Bank & Trust Co. of Rockford (hereinafter Bank). On May 19, 1978, Mr. Peterson was adjudged incompetent and the Bank was named as conservator of his estate. The incompetent died on June 25, 1980. The conservatorship was continued until January 22, 1981, when it was closed.

In its January 22, 1981, order, the trial court authorized distribution of the balances in the trust accounts in question as of the date of the settlor's death, along with interest earned on said accounts subsequent to the settlor's death, to the appellant. The order authorized a similar distribution to the beneficiary of another Totten trust account. That beneficiary is not a party to this action. The remaining assets of the conservatorship, after payment of approved fees, were ordered transferred to the estate of Frank Rudolph Peterson, deceased.

During the administration of the conservatorship the Bank established a single checking account into which it deposited all of the income, the rents and the interest from all of the assets of the incompetent. All of the expenses for the maintenance and support of the incompetent and his estate were paid from this account. Although the Bank left undisturbed the principal of the three savings accounts in question, the Bank requested that the interest payments from the trust accounts be made to it as the conservator, and the accrued interest from these accounts was deposited in the single checking account.

There is no dispute that the conservator bank expended funds out of the single conservatorship checking account for the incompetent's maintenance and support and costs of the administration of the incompetent's estate. It is clear that these expenses exceeded the interest and other income of the estate during the period of incompetency so that it was necessary for the conservator to expend some principal (other than that of the three savings account trusts) for these purposes. It is also apparent from the evidence that the incompetent's assets, excluding the trust accounts in question (including interest), were at all times sufficient to pay the expenses of the incompetent's estate.

On December 16, 1980, the trial court ruled that the conservator bank had properly collected the income from the trust accounts in question, deposited that income into the conservatorship checking account and paid the expenses for the settlor out of that account. The trial court did grant the trust beneficiary, Carol Wilson, the balance of the three accounts as of the date of Peterson's death, which included the unimpaired principal. The court also granted Carol Wilson interest earned subsequent to the settlor's death, but did not grant her the interest which had accrued during the settlor's incompetency and had been withdrawn by the conservator and expended for the care and maintenance of the incompetent-settlor.

The single issue posed in this appeal is whether the interest earned on a Totten trust, during the settlor's incompetency, is entitled to a priority which would require the conservator to expend all other assets of the incompetent's estate before expending this interest.

■■ The Illinois Supreme Court has addressed the nature and validity of Totten trusts and accepted the position adopted by the American Law Institute in section 58 of the Restatement (Second) of Trusts (1959):

> " 'Where a person makes a deposit in a savings account in a bank or other savings organization in his own name as trustee for another person intending to reserve a power to withdraw the whole or any part of the deposit at any time during his lifetime and use as his own whatever he may withdraw, or otherwise to revoke the trust, the intended trust is enforceable by the beneficiary upon the death

of the depositor as to any part remaining on deposit on his death if he has not revoked the trust.' " (*In re Estate of Petralia* (1965), 32 Ill. 2d 134, 138.)

The declaration of trust immediately creates an equitable interest in the beneficiaries although the enjoyment of that interest is postponed until the death of the settlor regardless of the fact that the interest is highly destructible because the settlor retains power of revocation. (32 Ill. 2d 134, 137-38.) The beneficiary of a Totten trust holds a present, although defeasible, interest therein contemporaneous with the settlor's superior rights; the settlor's death, however, terminates his right and renders the beneficiary's indefeasible. (*In re Estate of Wright* (1974), 17 Ill. App. 3d 894, 900.) Because Carol Wilson became entitled to the trust accounts by reason of having survived Frank Rudolph Peterson, who held a superior interest in the accounts during his lifetime, her interest as Totten trust beneficiary may properly be characterized as a survivorship interest. See Black's Law Dictionary 1297 (5th ed. 1979); Ill. Rev. Stat. 1979, ch. 32, par. 770(d).

Appellant cites *In re Estate of Lastick* (1975), 28 Ill. App. 3d 303, to support the position that her survivorship interest in the Totten trust accounts could not be destroyed or altered by the conservator in the absence of a showing that Peterson's other assets were insufficient to provide for his support and maintenance. The appellant insists that interest on Totten trusts may be expended for the settlor's support and maintenance, but only after other assets of the estate are depleted.

In *Lastick*, the incompetent owned a two-thirds interest in a land trust; her son owned the other one-third interest. By the terms of the land trust, the two-thirds beneficial interest of the incompetent would pass to her son on the incompetent's death if no other disposition had been made of the interest. No other disposition of the beneficial interest was made during the incompetent's life. After her death, her daughter, who was the sole devisee under her will, petitioned the court to cause the two-thirds beneficial interest owned by the incompetent in her lifetime to be sold to defray a pro rata share of the incompetent's expenses, which apparently remained unpaid. The liquid assets in the incompetent's estate had a value of $56,000; the land in the trust had a value of $50,000. The trial court denied the petition and directed that the probatable assets of the estate had to be first exhausted before charging the incompetent's interest in the land trust with such expenses. The appellate court agreed and found that, under the circumstances, the survivorship interest of the son in the land trust should prevail over the other assets of the incompetent.

*Lastick* is distinguishable from the instant case for several reasons. Most important, unlike the case at bar, *Lastick* does not deal with expenditures made by the conservator in good faith for the support and

maintenance of the incompetent, which expenditures the trial court had reviewed and approved. Also, *Lastick*, concerned a request to expend a portion of the principal of the trust, rather than the expenditure of income therefrom.

We have examined the other cases cited by the appellant and find them to be distinguishable from the case at bar. Appellant cites no cases that squarely deal with the issue of whether the interest on Totten trust accounts is entitled to the priority asserted so that the conservator bank's actions in expending these funds would be improper. Nor do the cases cited by appellant, taken singly or together, adequately support the asserted priority. Independent research has also failed to reveal any cases directly on point.

However, Illinois statutes and cases do establish the proper function and duties of the conservator under the law, and we find that the conservator bank acted properly in this case.

At the time the bank was appointed as conservator, the Illinois Probate Act set forth the duties of the conservator. (Ill. Rev. Stat. 1977, ch. 110½, par. 11—13.) The statute subjects the conservator to the direction of the court and vests him with responsibility for the care and management of the estate and requires the conservator to "manage the estate frugally and * * * apply the income and principal of the estate so far as necessary for the comfort and suitable support * * * of the ward * * *." Ill. Rev. Stat. 1977, ch. 110½, par. 11—13(b).

This court has described the relationship between the incompetent, the conservator and the court as follows:

> "An incompetent person or a person alleged to be incompetent is a ward of the court and entitled to the special protection of the court whenever the rights of such incompetent may be affected. The paramount duty of the conservator is, as the name implies, to conserve and protect the assets of an incompetent person and to see that such assets and the income therefrom are properly applied to the use, enjoyment and benefit of such incompetent. The duties and responsibilities of a conservator are those as set forth in the statute and the supervisory function of the court assures compliance therewith." (*Proehl v. Leadley* (1967), 86 Ill. App. 2d 472, 477-78.)

Under the direction of the court, the conservator performs his statutory obligation to preserve the estate of the incompetent and manage the assets so as to provide for the incompetent's care and support.

After adjudication of incompetency, Mr. Peterson was no longer competent to tend to his own affairs. (*In re Estate of Hirsh* (1960), 27 Ill. App. 2d 228, 235-36.) Pursuant to court authority, the conservator bank then took over management of the incompetent's assets.

The Illinois Supreme Court has described the proper management of a conservatorship estate as follows:

> "The governing principle in the management of property belonging to a person of unsound mind is the furtherance of his interest. * * * The court considers only the situation of the ward and does nothing wantonly or unnecessarily to alter the ward's property, but on the contrary takes care, for his sake, that if he recovers he shall find his estate as nearly as possible in the same condition as he left it. [Citations.]" (*Lewis v. Hill* (1944), 387 Ill. 542, 546.)

The conservator in the instant case expended the current interest and income of the estate for the current expenses for care and maintenance of the settlor-incompetent and used estate principal to meet these expenses only insofar as estate income was insufficient. Had the incompetent recovered, he would have found his estate in as nearly the same configuration as before his incompetency.

■■ Additionally, the acts of the conservator bank appear to comport with Peterson's intentions regarding his assets prior to his incompetency. That the settlor chose to make the trusts in question revocable indicates his intention that these funds be available to him during his lifetime if needed. A court's objective in construing a trust is to ascertain and give effect to the intent of the settlor. *Ford v. Newman* (1979), 77 Ill. 2d 335, 338.

In the last analysis, we must consider that it is the court which has control over the person and the estate of the ward. (Ill. Rev. Stat. 1977, ch. 110½, par. 11—13.) The conservator is under the general guidance and supervision of the probate court, and that court should hold him strictly accountable in the execution of his duties. (*Burton v. Estate of McGeever* (1916), 202 Ill. App. 606, 610.) Here, the trial court considered and approved the actions of the conservator and found them to be in the best interest of the incompetent and his estate. In so doing the court determined that, under the circumstances, the bank had properly expended the interest income from these Totten trusts along with other interest income from other assets of the settlor-incompetent for his support and maintenance. We conclude that, under the circumstances of this case, the survivorship interest which the appellant had in the interest income from the Totten trusts was not such as to prevent its expenditure by the conservator for the maintenance and support of the incompetent subject to the approval of the court.

■■ Considering the relevant statutes under the Probate Act, the principles of trust construction, and the judicial interpretation of the obligations of a conservator in the management of an incompetent's estate discussed above, we conclude that the conservator bank acted properly and that the trial court correctly refused to grant appellant the interest

accrued on the Totten trust accounts during the period of Mr. Peterson's incompetency. The accrued interest was not entitled to a priority *vis a vis* the other items of interest and income in this estate. Therefore, the bank properly expended these funds along with the other interest/income assets for the settlor-incompetent's necessary support and maintenance.

For the reasons set forth above, the order of the circuit court of Winnebago County, Probate Division, dated January 22, 1981, subject of this appeal, is hereby affirmed.

Affirmed.

HOPF and LINDBERG, JJ., concur.