Fifth Division
December 29, 2006

No. 1-05-3370

| | | |
|---|---|---|
| *In re* MARK W., a Minor, | ) | |
| | ) | Appeal from the |
| Respondent | ) | Circuit Court of |
| | ) | Cook County |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 99 JA 00877 |
| | ) | |
| Delores W., | ) | |
| Respondent, | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Sharon Coleman |
| (AMY B., | ) | Noreen Daly |
| | ) | Candace Fabri, |
| Respondent-Appellant)). | ) | Judges Presiding. |

JUSTICE NEVILLE delivered the modified opinion of the court:

Amy B., respondent and plenary guardian of the person for Delores W., the mentally-disabled

adult mother and respondent, appeals from the July 12, 2005, order of the juvenile court finding

Delores W.,[1] unfit. Following the termination of the parental rights hearing, a best-interest hearing

was held where the trial court terminated Delores W.'s parental rights to Mark W. In this appeal,

Amy B. presents the following issues for review: (1) whether Delores W., a mentally disabled adult

---

[1]In the record there are two spellings for the mother's name: Delores and Dolores. We will use the Delores spelling.

with a plenary guardian of the person, was denied due process by the juvenile court when on December 9, 2002, the juvenile court appointed a guardian *ad litem* (GAL) to represent the mentally disabled mother's best interest during a hearing to terminate the mother's parental rights; (2) whether the trial court's findings at the termination of parental rights hearings were against the manifest weight of the evidence; (3) whether the trial court had jurisdiction to terminate the parental rights of Delores W. when Delores W.'s plenary guardian of the person had not received notice of the proceedings; and (4) whether the trial court erred when it denied the plenary guardian's attempts to call witnesses, including the minor.

## BACKGROUND

### The Probate Court's Determination That Delores W. is Disabled

On August 29, 1997, the probate court entered an order naming Amy B., Delores W.'s mother, plenary guardian of the person for Delores W. The probate court found, as of July 10, 1997, that a report by Dr. Simon Gewold indicated that Delores W. is mentally handicapped, has mild to moderate mental retardation, and functions at a third-grade level. The probate court's order indicated that the appointment of a GAL for the guardianship proceedings had been waived. The probate court issued letters of office to Amy B. naming her plenary guardian of the person of Delores W., a disabled person. The letters of office provided that Amy B. "is authorized to have under the direction of the court the custody of the ward and to do all acts required by law."

### The Birth of Mark W.

According to the petition for adjudication of wardship, on July 1, 1998, approximately 10 months after Amy B. was appointed Delores W.'s plenary guardian of the person, Delores W. gave

birth to a son, Mark W.  Mark W.'s father is Bradley B.

### The Juvenile Court's Termination of Delores W.'s Parental Rights

The Illinois Department of Children and Family Services' (DCFS) client service plan for March 31, 1999, reveals that Mark W.'s babysitter called DCFS and reported that Delores W. had forced a plastic toy down Mark W.'s mouth and that she hit him on the head with a television remote control. On April 4, 1999, DCFS took protective custody of Mark W. and placed him in foster care with his maternal grandmother, Amy B.  At the same time, Mark W.'s mother, Delores W., was also a resident in Amy B.'s home because Amy B. was the plenary guardian of her person.

### The Temporary Custody Hearing

On April 8, 1999, the State filed a petition for adjudication of wardship alleging that, pursuant to sections 2-3(1)b and 3(2)(ii) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(l)(b), (2)(ii)(West 1998)), nine-month-old Mark W. was neglected in that his environment was injurious to his welfare, and that he was abused due to a substantial risk of physical injury.  The following facts were provided to support the allegations in the petition:

> "On or about March 31, 1999, natural mother shoved a plastic object into minor's mouth and down his throat causing minor to gag.  Natural mother then hit minor on the head with an object several times. Natural mother also attempted to choke minor when minor continued to cry.  Natural mother grabbed minor and attempted to pull minor away from another individual."

On April 9,1999, the court took temporary custody of Mark W., and DCFS placed Mark W.

in the care of Amy B.   On July 29, 1999, Mark W. was removed from Amy B.'s care to a specialized

foster care placement due to risk of harm and concerns about Amy B.'s parenting skills.  Mark W.

had what appeared to be burns on his stomach and on his toe that Amy B. was unable to explain.

The Appointment of an Attorney and GAL for Delores W.

On October 3, 2000, Mark W.'s case was set for trial, but Judge Sharon Coleman was

informed by the assistant State's Attorney that Delores W. was not represented by an attorney.  Judge

Coleman had a discussion with Amy B. about Delores W.'s resources and confirmed that the probate

court had appointed her guardian of Delores W.  After the discussion with Amy B., Judge Coleman

made the following statement:

"The Court will make a finding of indigency as to Deloris, and per

your motion the Court will appoint an attorney to represent the

mother.

* * *

The Court believes that would be the appropriate thing to do,

understanding that that attorney is going to be appointed to represent

her as attorney and as guardian ad litem.

As for legal purposes only you [Amy B.] are still her legal

guardian.  But for legal purposes in this court she will have a guardian

ad litem, so everyone understands?

* * *

And you can confer with that person to a certain extent, but

-4-

that person also has a dual role as an attorney and as a guardian ad litem. This is a person who is a guardian for minors or people who have to have someone speak to them and have guardian ad litem. Just like a child can't speak for themselves. Do you understand that?

\* \* \*

That personal [sic] will consult with you, but they will also speak independently with you. Do you understand that? You will not have authority over that person. Do you understand that?

\* \* \*

Apart from the parent. In this case you have a mother who has a legal guardian because of her condition, and that needs to be able to watch over her everyday living, and she will have an attorney who will consult with you as an attorney, but that attorney will also be her guardian ad litem and may speak with two hats on, okay?"

Judge Coleman passed the case to "make sure" Delores W. and Amy B. had an opportunity to meet with and speak to the bar attorney that the court intended to appoint. When the case was recalled, Ray Morrissey, the bar attorney the court intended to appoint, reported that he had met and talked with Delores W. and Amy B., and he made the following statement to the court:

"Your Honor, Ray Morrissey. I am the bar attorney today, and I have attempted to speak with the mother along with her guardian. The guardian is not present at this time. She has made it

known emphatically clear that she does not want me to represent her

daughter as attorney or guardian, and that she wants to hire a private

attorney for her daughter.

* * *

I have talked to the mother, and I also explained to the

guardian that there may be a conflict between what she feels is in the

best interest of her daughter and what I feel is the best interest, and

then she stopped me and she said: I want to hire a private attorney for

my daughter.

* * *

I have no problem with accepting appointment as the guardian.

I am just not sure if she [Amy B.] as a legal guardian would have a

right to hire a private attorney for her daughter."

After learning from Morrissey that Amy B. did not want him appointed to represent Delores W. as either her attorney or guardian *ad litem*, Judge Coleman stated that Amy B. would be allowed time to hire a private attorney. Finally, Judge Coleman did not enter an order appointing Morrissey as Delore W.'s attorney but entered and order appointing Morrissey as Delores W.'s guardian *ad litem*.[2]

---

[2] Although the October 3, 2000 order is ambiguous and does not specifically indicate whether Morrissey was appointed as both Delores W.'s attorney and GAL, the October 3, 2000 transcript is clear that Morrissey was only appointed as Delores W.'s GAL.

The First Adjudicatory and Dispositional Hearings

On October 10, 2000, Judge Coleman entered an order amending the petition for adjudication of wardship as follows: "the minor is dependant in that he is under 18 years of age and is without proper care because of the physical or mental disability of his parent, guardian or custodian pursuant to 705 ILCS 405/2-4." On November 27, 2000, Judge Coleman held an adjudicatory hearing and found that Mark W. was a dependant child, pursuant to section 2-4 of the Juvenile Court Act (705 ILCS 405/2-4 (West 1998)), due to the mental condition of his mother. On March 29, 2001, Judge Coleman conducted a dispositional hearing making Mark W. a ward of the State. Judge Noreen Daly was presiding over the case on March 15, 2002, and, after making a finding that Amy B., the plenary guardian of Delores W.'s person, had not been notified, Judge Daly vacated the adjudicatory and dispositional orders. The court based its decision upon In re K.C., 323 Ill. App. 3d 839, 852 (2001), which held that the plenary guardian of a disabled person whose parental rights are the subject of proceedings under the Juvenile Court Act is a necessary party under the Act and must be named as a party respondent and served with notice. The adjudication of wardship petition was amended and added Amy B.'s name as a respondent. On October 15, 2002, the adjudication of wardship petition was again amended to include the following:

> "The maternal grandmother was appointed as-the natural mother's
> plenary guardian of the person on August 29, 1997. The natural
> mother is incapable of taking care of herself or the minor due to her
> disability. On or about March 29, 1999 the natural mother left the
> home with the minor without any additional supervision. On or about

March 30, 1999 the natural mother ran away with the minor without

any additional supervision on two occasions."

.    On December 9, 2002, Judge Daly was informed by the parties' attorneys that Delores W. had a GAL, but was not represented by an attorney.  Judge Daley stated that she was unaware that Delores W. did not have an attorney because she thought that Morrissey was Delores W.'s attorney. Judge Daly stated:

> "Number one, the issue that arose is the fact that the mother has a
>
> Guardian ad Litem by way of Mr. Morrissey.  However, he is not her
>
> attorney.  The court, quite frankly, was unaware of that or it slipped
>
> my attention.  Mr. Morrissey was originally appointed as her attorney
>
> and her Guardian ad Litem, however, the legal guardian, [Amy B.]
>
> discharged Mr. Morrissey.
>
> * * *
>
> There was a rather lengthy off-the-record discussion
>
> concerning whether or not the mother actually needed an attorney.  I
>
> think that all parties are in agreement that the mother does need an
>
> attorney independent of her Guardian ad Litem and independent of the
>
> fact that the legal guardian has legal representation.
>
> * * *
>
> The next issue is or was could Mr. Morrissey at this stage be
>
> both the mother's guardian and the mother's attorney.  Mr. Morrissey,

do you want to briefly address your position on that?

MR. MORRISSEY:   I would object for a couple of reasons. Firstly, I was discharged as her attorney. My independent standing all the way through, and I was hoping I had made it clear every time I appeared on the case, I was just appointed as her guardian, not as her attorney and guardian. Correct, I was appointed as her attorney and guardian but I was fired by Amy [B.] So for me to be reappointed I think is a conflict on the case.

Also, if your Honor saw fit to appoint me on the case today and we did proceed, there were a whole different set of issues that I have to deal with. In this particular case there's a strong conflict, as we say, bifercation between my role as guardian and my role as attorney. I would be advocating two contradictory positions. I don't think that would be in the best interest of my client at this time. So, I'd ask the matter be passed for appointment of private attorney.

THE COURT:  The court is going to do that and has assigned an order requesting a bar attorney.

While we do that, the other issues or the next issue that was discussed * * * [was] whether the legal guardian, [Amy B.], has a conflict at this stage with respect to her role in this case via her duties under the Probate Act and her now position on this case as can be

determined or has been in part articulated by her attorneys. I think that that's something Mr. Morrissey as the mother's guardian is going to be looking at in the best interest of his client more closely in terms of determining whether additional steps have to be taken in the probate court to either modify [Amy B.'s] duties, discharge [Amy B.] from her role or otherwise."

Finally, Judge Daly appointed Mark W. Kusatzsky, a bar attorney, as Delores W.'s legal counsel.

The Second Adjudicatory and Dispositional Hearings

On January 17, 2003, the juvenile court held a second adjudicatory hearing and entered an adjudication order finding that Mark W. was neglected due to exposure to an injurious environment and was abused due to exposure to a substantial risk of physical injury. The reasons given for the court's findings were that Delores W. has mental limitations and Delores W.'s legal guardian, Amy B., failed to ensure that Delores W. was supervised at all times, resulting in Delores W. hitting Mark W. and putting plastic toys in his mouth. The adjudication order noted that the findings were the result of abuse or neglect inflicted by a parent.

On March 6, 2003, the juvenile court entered a dispositional order adjudging Mark W. a ward of the court and finding that (1) Delores W. was unwilling and unable for reasons other than financial circumstances to care for, protect, train, or discipline the minor; (2) Bradley B. was unable for reasons other than financial circumstances to care for, protect, train, or discipline the minor; and (3) Amy B. was unwilling and unable for reasons other than financial circumstances to care for, protect, train, or discipline the minor. The court placed Mark W. under the guardianship of DCFS. On

January 16, 2004, the juvenile court found that Delores W. had not made any progress toward the goal of return home, and the juvenile court established a permanency goal of substitute care pending court determination on termination of parental rights.

In August of 2004, the juvenile court entered an order allowing six-year-old Mark W. to move to California with his foster mother Michelle N., who had been caring for Mark W. for four years.

The Fitness Hearing

On November 9, 2004, the fitness portion of the termination proceedings began. Neither Delores W. nor Amy B. was present during the termination proceedings, but their attorneys were present in court. Amy B. was represented by attorney Dean Bastounes. Delores W. was represented by Kusatzky and Morrissey appeared as Delores W.'s GAL. The State presented the following witnesses: (1) Meg O'Rourke, a clinical social worker employed at Little City Foundation; and (2) Traneeka Jackson, a caseworker employed at Little City Foundation.

During the hearing on November 9, 2004, Judge Fabri, another judge who presided over the case, wanted a history of the case: an explanation of why Amy B., the plenary guardian, and Morrissey, the GAL, were both guardians in the same case. Kusatzky, Delores W.'s court-appointed attorney, explained to Judge Fabri, how Morrissey was originally appointed to represent Delores W. in the proceedings to terminate Delores W.'s parental rights. At the November 9, 2004, hearing, Morrissey stated that he believed that Delores W.'s parental rights should be terminated during the following colloquy with Judge Fabri:

"THE COURT: * * * [Delores W.] has the right to have her guardian participate in these proceedings to help preserve * * * [Amy B.'s] parental rights, and

-11-

that is the view that I am going to be looking at, that there are plenty of people here.

MR. MORRISSEY: That is not my position. I am not trying to preserve ***

[Amy B.'s] rights. Well, her rights, but not her as a parent over Mark. My position

has always been that termination proceedings should go forward and rights should be

terminated.

* * *

THE COURT: I have never had a guardian ad litem for a disabled person.

I don't think that the law requires it. I don't know why Judge Daly appointed you, but

I am not striking your position.

MR. MORRISSEY: Okay.

THE COURT: You can participate in the proceedings. Although, I do want

to make clear that I don't think that you are the guardian for the minor."

While Judge Fabri did not think that Delore W. needed a guardian and a GAL, she permitted

Morrissey to remain on the case as Delores W.'s GAL.

After all the parties rested, the State maintained that Delores W. should be found unfit.

Morrissey, Delores W.'s GAL, along with the State and the Public Guardian asked the court to find

Delores W. to be unfit. Morrissey told the court that he understood that the court felt this was an

unusual approach for someone in his position to take. He explained that the testimony had made clear

that the only way Delores W. could be reunited with Mark W. would be if she entered a residential

assisted-living program. Morrissey maintained that Delores W. had been given the opportunity to

do so, but had chosen not to. Based on these facts, Morrissey felt that the State had met its burden

of proving Delores W. unfit. Both Delores W.'s attorney, Kusatzky, and Amy B.'s attorney, Bastounes, argued against the findings of unfitness.

On April 29, 2005, the juvenile court found that Delores W. was unfit based upon her failure to maintain a reasonable degree of interest, concern, or responsibility and based upon her failure to make reasonable progress. Delores W.'s failure to visit with Mark W. and to comply with the service plans established her failure to maintain reasonable interest, concern, or responsibility. The juvenile court further found that Delores W. failed to make reasonable progress toward Mark W.'s return home, not only during the first nine months after the adjudication in January of 2003, but during the entire year-long period beginning with the adjudication and ending with the change of the permanency goal in January of 2004.

Best Interest Hearing

On July 12, 2005, the trial court commenced the best interest hearing. The State presented the following witnesses: (1) Michelle N., Mark W.'s foster mother; (2) Traneeka Jackson, a caseworker employed by Little City Foundation; (3) Tina Dorrow, an adoption supervisor employed at Little City Foundation; and (4) Julie Evets, a caseworker employed by Little City Foundation. After the testimony concluded, the State, the Public Guardian, and Morrissey, as Delores W.'s GAL, each asked the court to grant the State's petition. Counsel for Delores W. and counsel for Amy B. asked that the State's petition be denied. The juvenile court found, by a preponderance of the evidence, that it was in Mark W.'s best interests to terminate Delores W.'s parental rights and to appoint a guardian with the right to consent to his adoption. The juvenile court entered an order on July 12, 2005, which found Delores W. unfit on grounds (b) and (m) (750 ILCS 50/1(D)(b),(m)

(West 1998)), found the father unfit, terminated the rights of the parents, and appointed a guardian with the right to consent to Mark W.'s adoption.

Amy B.'s Motion to Reconsider

On August 10, 2005, Amy B. filed a motion to reconsider which included, among other things, an allegation that the juvenile court erred by allowing Delores W.'s GAL, Morrissey, to remain on the case after he took a position favoring termination of Delores W.'s rights and that the evidence failed to show that it was in Mark W.'s best interests to terminate Delores W.'s parental rights. On September 16, 2005, the court entered an order denying the motion to reconsider. On October 14, 2005, Amy B. filed a notice of appeal from the June 9, 2005, order finding that Delores W. was unfit, the July 12, 2005, order terminating Delores W.'s parental rights, and the September 16, 2005, order denying her motion to reconsider.

ANALYSIS

The first question presented to the court is whether a mentally-disabled-adult parent, represented by a plenary guardian of the person appointed by the probate court, was denied due process by the juvenile court when during the proceedings to terminate the parental rights of the mentally-disabled-adult mother the juvenile court permitted the bar attorney to hold an attorney-client conference with the mother and her guardian, but only appointed the bar attorney as a GAL for the mentally-disabled-adult mother so he could inform the court about the adult mother's best interests. Amy B. argues that Delores W.'s due process rights were violated because Morrissey, her GAL, was ineffective when he advocated to the juvenile court that Delores W.'s parental rights be terminated. The Public Guardian argues that although the juvenile court had no authority, pursuant to either the

Juvenile Court Act or case law, to appoint Morrissey as Delores W.'s GAL, there was nothing to prevent the juvenile court from appointing Morrissey as Delores W.'s GAL. The Public Guardian also argues that Morrissey's role as GAL was not to advocate for Delores W., but to make recommendations to the juvenile court that he believes are in the best interest of Delores W., even if his opinion is contrary to the desires of Delores W. The State argues that the Juvenile Court Act does not address whether the court may appoint a GAL for an indigent, disabled parent in termination-of-parental-rights proceedings. The State maintains, instead, that Morrissey, as Delores W.'s GAL, acted properly, and that in any event the evidence of Delores W.'s unfitness was overwhelming.

We note that the basic requirements of due process and fairness must be satisfied in juvenile court proceedings. In re K.C., 323 Ill. App. 3d 839, 846-47 (2001), quoting People v. D.J., 175 Ill. App. 3d 491, 493 (1988), citing In re Gault, 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428 (1967). We also note that the first juvenile court judge's appointment of a GAL for the disabled mother, who was already represented by a plenary guardian of the person, presented a problem for one of the successor judges in this case. In order to answer the due process question in this case, we must examine the constitution, and in order to determine the power of a juvenile court judge to appoint a GAL, we must examine the Juvenile Court Act. The aforementioned questions are questions of law and involve statutory construction, which we review *de novo*. Feltmeier v. Feltmeier, 207 Ill. 2d 263, 266-67 (2003); see also In re K.C., 323 Ill. App. 3d at 847, citing Village of Mundelein v. Franco, 317 Ill. App. 3d 512, 517 (2000).

A.  The Plenary Guardian of the Person's Authority to Act

We begin our analysis with the August 29, 1997, order entered by the probate court appointing Amy B. as the plenary guardian of the person for Delores W. because that order was entered before Morrissey was appointed as her GAL. The procedure for the appointment of guardians for disabled adults is codified in the Probate Act of 1975 (Probate Act) (755 ILCS 5/1 *et seq.* (West 1998)).  Section 11a-3(a) of the Probate Act provides that "the court may adjudge a person to be a disabled person and may appoint (1) a guardian of his person, if because of his disability he lacks sufficient understanding or capacity to make or communicate responsible decisions concerning the care of his person, or (2) a guardian of his estate, if because of his disability he is unable to manage his estate or financial affairs or (3) a guardian of his person and of his estate." 755 ILCS 5/11a-3(a) (West 1998).  Section 11a-3(b) further provides that "[g]uardianship shall be utilized only as is necessary to promote the well-being of the disabled person, to protect him from neglect, exploitation, or abuse, and to encourage development of his maximum self-reliance and independence. Guardianship shall be ordered only to the extent necessitated by the individual's actual mental, physical and adaptive limitations."  755 ILCS 5/11a-3(b) (West 1998).

In this case, the probate court appointed Amy B. as Delores W.'s plenary guardian of the person.  Plenary guardians are only appointed "for the respondent's person or estate or both" when the respondent is adjudged to be disabled and totally without capacity as specified in section 11a-3, and if the court finds that limited guardianship will not provide sufficient protection for the disabled person.  755 ILCS 5/11a-12(b) (West 1998). In August 1997, the probate court determined that Delores W. was totally without understanding or capacity to make or communicate responsible

decisions concerning the care of her person; therefore, the probate court entered an order appointing Amy B. plenary guardian of the person and issued her letters of office. As a plenary guardian of the person, Amy B. was vested upon appointment with the entirety of the authority provided under section 11a-17 of the Probate Act. In re K.C., 323 Ill. App. 3d at 849, citing 755 ILCS 5/11a-14(d) (West 1998). Indeed, the decision-making authority of a plenary guardian of the person under section 11a-17 is exceedingly broad. In re K.C., 323 Ill. App. 3d at 849, citing In re Adoption of Savory, 102 Ill. App. 3d 276, 278 (1981). The practical effect of section 11a-17 is that Amy B., as the plenary guardian of the person, under the direction of the court, makes all decisions and exercises all legal rights on behalf of the ward, Delores W., that impact the exercise of the guardian's statutory authority. In re K.C., 323 Ill. App. 3d at 849, citing 755 ILCS 5/11a-17(a) (West 1998).

The State, however, argues that Amy B., as Delores W. plenary guardian of the person, was only authorized to act "to the extent ordered by the court." We find the State's construction of the words "[t]o the extent ordered by the [probate] court" in section 11a-17 of the Probate Act (755 ILCS 5/11a-17(a)(West 1998)) to be in error. It should be noted that section 11a-17 of the Probate Act prescribes the duties for both limited and plenary guardians. See 755 ILCS 5/11a-17 (West 1998). According to section 11a-14(a) of the Probate Act, a limited guardian of the person only has the authority to act and to perform those duties provided under section 11a-17 which are specifically conferred upon the limited guardian by the court's order. See 755 ILCS 5/11a-14(a) (West 1998). Conversely, when the respondent is adjudged to be disabled and totally without capacity as specified in section 11a-3 (see 755 ILCS 11a-12(b) (West 1998)), as was the case with Delores W., we find no court order limitation in the Probate Act on the authority of the plenary guardian of the person to

act on behalf of the ward pursuant to section 11a-17. See 755 ILCS 5/11a-17 (West 1998); see also 755 ILCS 5/11a-14(d) (West 1998). The aforementioned statutes make it clear that the court is not required to enter an order which specifically delineates the duties of plenary guardians who have broad powers and are authorized to do all acts required by law. In re Marriage of Burgess, 189 Ill. 2d 270, 273 (2000) (plenary guardians have authority to make personal decisions under section 11a-17 even though the power to do so is not specifically enunciated); In re K.C., 323 Ill. App. 3d at 849. Because both limited and plenary guardians of the person have the duties prescribed in section 11a-17 of the Probate Act, we find that the words "to the extent ordered by the court" refer to the probate court's power to limit by court order the duties of a limited guardian of the person. See 755 ILCS 5/11a-12(b), 11a-14(a), (d), 11a-17 (West 1998). Therefore, we find that the duties delineated in section 11a-17 cannot be exercised by a limited guardian of the person until a court order has been entered which specifies the extent of the limited guardian of the person's authority (see 755 ILCS 5/11a-14(a) (West 1998)), while a plenary guardian of the person, the complete guardian in every aspect, has all of the authority provided in section 11a-17 and the power to make decisions that are not specifically enunciated. See Burgess, 189 Ill. 2d at 273; 755 ILCS 5/11a-14(a), 11a-17 (West 1998).

In this case, the letters of office issued to Amy B. as plenary guardian of the person of Delores W. provided that Amy B. "is authorized to have under the direction of the court the custody of the ward and to do *all* acts required by law." (Emphasis added.) The letters of office authorized Amy B. to act on Delores W.'s behalf and to exercise all of the express and implied duties prescribed in section 11a-17 of the Probate Act. See In re K.C., 323 Ill. App. 3d at 849-50; also see Burgess, 189

Ill. 2d at 273. Consequently, once the probate court issued letters of office to Amy B., she had the complete authority to act and to do all acts required by law on behalf of Delores W.

B. The Juvenile Court's Appointment of a GAL for a Mentally Disabled Adult

The next question we must address is whether the Juvenile Court Act empowered the juvenile court to appoint a GAL for Delores W. It appears from our reading of the record that Judge Coleman originally intended to appoint Morrissey, the bar attorney, as Delores W.'s attorney and as her GAL. In fact, Judge Coleman passed the case so Morrissey, Delores W. and Amy B. could confer. We note, however, that after Morrissey met with and spoke to Delores W. and Amy B,.Judge Coleman did not enter an order appointing Morrissey as Delores W.'s attorney because Amy B. objected to Morrissey's appointment as Delores W.'s attorney or as her GAL. Instead, Judge Coleman entered an order only appointing Morrissey as Delores W.'s GAL. When Judge Daly presided in Judge Coleman's absence, she permitted Morrissey to continue as Delores W.'s GAL. We also note that Judge Fabri, another judge who presided, questioned why Morrissey was appointed, but refused to remove him as Delores W.'s GAL. While the Juvenile Court Act empowered juvenile court judges with the power to appoint attorneys for parties (705 ILCS 405/1-5 (West 1998)), and Delores W. was a party, we must determine whether a juvenile court judge can appoint a GAL for a parent, who is a party and who has been adjudged a mentally disabled adult, during termination-of-parental-rights proceedings.

The purpose of the Juvenile Court Act is "to secure for each *minor* subject hereto such care and guidance *** as will serve the safety and moral, emotional, mental, and physical welfare of the minor and the best interests of the community." (Emphasis added.) 705 ILCS 405/1-2(1) (West

1998). In all child custody proceedings under the Juvenile Court Act, the court's primary concern is protecting the best interests of the children involved. In re Gustavo H., 362 Ill. App. 3d 802, 809 (2005), citing In re Ashley F., 265 Ill. App. 3d 419, 424 (1994); 705 ILCS 405/1-2 (West 2004). While the Juvenile Court Act permits juvenile court judges to appoint GALs for minors (705 ILCS 405/2-17(1)(a) (West 1998)), because its purpose is to serve minors, it does not contain a similar provision that permits juvenile court judges to appoint a GAL for a mentally disabled adult parent who is not a minor but is a party to the proceedings. 705 ILCS 405/1-1 *et seq.* (West 1998).

As previously noted in this opinion, the Probate Act governs proceedings involving disabled adults. 755 ILCS 5/1-1 *et seq.* (West 1998). Section 11a-10 provides that "[u]pon the filing of a petition, pursuant to section 11a-8" of the Probate Act, "[t]he court shall appoint a [GAL] to report to the court concerning the respondent's best interests consistent with the provisions of this Section." 755 ILCS 5/11a-10 (West 1998). Section 11a-10 of the Probate Act clearly prescribes the procedure that must be followed by a court when appointing a GAL for a disabled person. 755 ILCS 5/11a-10 (West 1998). Therefore, we find that if the juvenile court is going to appoint a GAL for a mentally-disabled-adult parent that is a party to a termination proceeding, the appointment should be made pursuant to the Probate Act. 755 ILCS 5/1-1 *et seq.* (West 1998).

The next question we must look at is the specific function of a GAL in probate proceedings. A GAL functions as the " 'eyes and ears of the court,' " not as the ward's attorney. In re Guardianship of Mabry, 281 Ill. App. 3d 76, 88 (1996), quoting In re Marriage of Wycoff, 266 Ill. App. 3d 408, 415 (1994). The GAL represents the best interest of the ward, as the GAL sees them, not as the ward sees them. In re Guardianship of Mabry, 281 Ill. App. 3d at 88, citing D. Jost, The Illinois

Guardianship for Disabled Adults Legislation of 1978 and 1979: Protecting the Disabled From Their Zealous Protectors, 56 Chi.-Kent L. Rev. 1087, 1094 (1980), ("The [GAL] is responsible for representing the respondent. Traditionally, this has meant representing the respondent's best interests as opposed to serving as an advocate for the respondent's possibly ill-advised wishes"). If the GAL and the ward are in agreement, the GAL does in effect represent the ward. In re Guardianship of Mabry, 281 Ill. App. 3d at 88-89. However, the court must appoint separate counsel if the ward requests it or if the ward and GAL take different positions. 755 ILCS 5/11a-10(b)(2) (West 1998).

We note that section 11a-10 of the Probate Act is entitled "Procedures preliminary to hearing." 755 ILCS 5/11a-10 (West 1998). We also note that when guardians of estates are involved, a GAL is only required prior to the hearing on the respondent's competence, but section 11a-18(c) provides that a court may still appoint a GAL or next friend to represent the ward's interest in subsequent litigation. See 755 ILCS 5/11a-18(c) (West 1998); see also In re Guardianship of Mabry, 281 Ill. App. 3d at 89. However, Amy B. is Delores W.'s plenary guardian of the person, not the guardian of her estate, and we see no comparable provision in section 11a-17, where the duties of guardians of the person are delineated empowering the court to appoint a GAL or next friend to represent the ward's interest in subsequent litigation where there is a plenary guardian of the person. See 755 ILCS 5/11a-17 (West 1998). Therefore, we find that a GAL is not required after a hearing on the mentally disabled adult's competence or after a plenary guardian of the person is appointed. See 755 ILCS 5/11a-10, 11a-17 (West 1998).

In this case, we previously noted that the Juvenile Court Act contains no provision to appoint a GAL for Delores W., Mark W.'s mentally-disabled-adult mother, during a termination of parental

rights hearing. Compare 705 ILCS 405/2-17(1) (West 1998). Additionally, we noted that Delores W. was a party to the termination proceedings, not the subject of it, and she was represented by an attorney and plenary guardian of the person. Therefore, since a plenary guardian of the person had been appointed by the probate court to protect Delores W.'s interests before the appointment of the GAL by the juvenile court, and since Kuzatsky replaced Morrissey and had been appointed as Delores W.'s attorney, we find no evidence in the record of a need for the juvenile court to appoint a GAL to protect Delores W.'s interests; rather, the juvenile court's duty was to protect the best interests of Delores W.'s child, Mark W. See 705 ILCS 405/1-2(1) (West 1998); see also 705 ILCS 405/2-17(1)(a) (West 1998).

Nevertheless, Delores W., as a party to the proceedings, had a right to be present, along with Amy B., her plenary guardian of the person who was a necessary party, and they had a right to be heard and present evidence material to the proceeding. See 705 ILCS 405/1-5(1) (1998). In this case we note that Amy B. was appointed Delores W.'s plenary guardian of the person on August 29, 1997, by the probate court. We also note that the order appointing Amy B. plenary guardian of the person for Delores W. indicates that a GAL had been waived. Apparently, the probate court did not find it necessary to appoint a GAL for Delores W. during the preliminary proceedings to determine Delores W.'s competency, thereby entrusting Amy B. with the sole responsibility of representing Delores W.'s best interests. More importantly, in 1997, the probate court issued Amy B. letters of office as plenary guardian of the person of Delores W. and gave her complete authority to act on Delores W.'s behalf before the commencement of the termination of parental rights proceedings on March 31, 1999, in the juvenile court. See In re K.C., 323 Ill. App. 3d at 850. "Plenary" is defined as " 'complete in

every respect.' " In re K.C., 323 Ill. App. 3d at 848, quoting Webster's Third New International Dictionary 1739 (1986). Therefore, we hold that the juvenile court did not have the authority, pursuant to the Juvenile Court Act, to appoint a GAL for Delores W., the mentally-disabled-adult mother of Mark W. who was already represented by Amy B., the plenary guardian of her person. See 705 ILCS 405/2-17(1) (West 1998) (the juvenile court must appoint a GAL, who must represent the best interests of the "minor"); see also 755 ILCS 5/11a-3(b) (West 1998) (pursuant to the Probate Act, plenary guardians of the person must promote the well-being of the disabled person and represent their best interest).

C.  The Juvenile Court's Power to Revoke the Plenary Guardian's Letters of Office

Although the juvenile court was not empowered, pursuant to the Juvenile Court Act, to appoint a GAL for Delores W., a mentally disabled adult, we are mindful that once Delores W. was adjudicated incompetent in 1997, she became a ward of the court and is entitled to the court's protection. In re Estate of Nelson, 250 Ill. App. 3d 282, 286 (1993), citing Proehl v. Leadley, 86 Ill. App. 2d 472 (1967). A court is not divested of its jurisdiction over a mentally disabled person by the appointment of a plenary guardian of the ward's person. In re Estate of Nelson, 250 Ill. App. 3d at 286, citing Hoit v. Snodgrass, 315 Ill. 548 (1925); In re Estate of Peterson, 103 Ill. App. 3d 481 (1982). The jurisdiction of the court continues until the adjudication of the ward's disability is terminated or the ward dies. In re Estate of Nelson, 250 Ill. App. 3d at 287. Guardians only act as the hand of the court and are at all times subject to its direction in the manner in which they provide for the care and support of the disabled person. In re Estate of Nelson, 250 Ill. App. 3d at 287, citing In re Estate of Peterson, 103 Ill. App. 3d at 485-86. The court is under a duty to judicially interfere

if the guardian is about to do anything that would cause harm or threaten harm to the ward. In re Estate of Nelson, 250 Ill. App. 3d at 287, citing In re Estate of D.W., 134 Ill. App. 3d 788 (1985); see also 755 ILCS 5/11a-20(a) (West 1998). Section 11a-20 provides that "[u]pon the filing of a petition by or on behalf of a disabled person or on its own motion, the court may *** revoke the letters of guardianship of the *** person." 755 ILCS 5/11a-20(a) (West 1998). Therefore, section 11a-20 of the Probate Act empowers the court to initiate proceedings to revoke a guardian's letters of office if the guardian is about to do something that would cause harm or threaten harm to the ward. 755 ILCS 5/11a-20(a) (West 1998).

It is clear that the court is duty bound to intervene if the guardian of the person is about to cause harm or threaten harm to the ward. In re Estate of Nelson, 250 Ill. App. 3d at 287, citing In re Estate of D.W., 134 Ill. App. 3d 788, 791 (1985). In this case, the record is silent and does not reveal that the juvenile court held a hearing or made findings that Amy B. was harming Delores W. or was not fulfilling her duties as the plenary guardian of the person. Therefore, based upon the record before this court, the juvenile court took no action, pursuant to section 11a-20 of the Probate Act, to revoke Amy B.'s letters of office.

In this case, the record indicates that Amy B. sought to preserve Delores W.'s parental rights. In re K.C. points out that a court may presume that any parent, even a mentally disabled parent, would contest the removal of his or her child from his or her home. See In re K.C., 323 Ill. App. 3d at 851. In re K.C. holds that the plenary guardian of a disabled mother is a necessary party to termination-of-parental-rights proceedings. See In re K.C., 323 Ill. App. 3d at 852. Accordingly, we find that Amy B., as plenary guardian of the person for Delores W., was acting pursuant to the

letters of office issued by the probate court and was empowered to act in Delores W.'s best interest by preserving Delores W.'s parental rights.

D. Parties are Entitled to Due Process in Termination of Parental Rights Proceedings

Finally, we must determine whether Delores W. was denied due process when Morrissey, the bar attorney, was directed by Judge Coleman to talk with Delores W. and Amy B about acting as Delores W.'s attorney, but after the attorney-client conference, Judge Coleman entered an order which appointed Morrissey as Delores W.'s GAL but did not appoint him as her attorney. " ' [T]he United States Supreme Court [has] stated that the interest of natural parents in the care, custody, and management of their children is a fundamental liberty interest protected under the fourteenth amendment.' " In re K.C., 323 Ill. App. 3d at 849, quoting In re B.C., 247 Ill. App. 3d 803, 806 (1993), and citing Santosky v. Kramer, 455 U.S. 745, 747-48, 71 L. Ed. 2d 599, 603, 102 S. Ct. 1388, 1391-92 (1982) and In re Enis, 121 Ill. 2d 124, 128-29 (1988). In order to effectuate this fundamental liberty interest, section 1-5(1) of the Juvenile Court Act empowers parents with a right to be present, to be heard, to present material evidence, to cross-examine witnesses, to examine pertinent court files and records and to be represented by counsel. In re K.C., 323 Ill. App. 3d at 849, citing 705 ILCS 405/1-5(1) (West 1998). In Tri-G, Inc. v. Burke, Bosselman & Weaver, 222 Ill. 2d 218 (2006), our supreme court delineated the test to be used to determine whether a litigant had been denied procedural due process. See Tri-G, Inc., 222 Ill. 2d at 244-45. The Tri-G, Inc., court stated:

> "The requirement of due process is met by having an orderly proceeding
>
> wherein a person is served with notice, actual or constructive, and has an

opportunity to be heard and to enforce and protect his rights. The

"'fundamental requirement of due process in any proceeding which is to be

accorded finality is notice reasonably calculated, under the circumstances,

to apprise interested parties of the pendency of the action and afford them

an opportunity to present their objections.'" [Citations.] Due process does

not guarantee against erroneous or unjust decisions by courts which have

jurisdiction of the parties and the subject matter, and a constitutional

question is not presented where a court may have misconstrued the law or

committed an error for which its judgment should be reversed. See *Reyes v.

Court of Claims,* 299 Ill. App. 3d 1097, 1104-05 (1998)." Tri-G, Inc., 222

Ill. 2d at 244-45.

Applying these principles to this case, it is clear that Amy B. was not denied procedural due

process, however, this is a case where Morrissey, the GAL, had a conflict, thus the trial court

committed an error for which its judgment should be reversed. We note that on October 3, 2000, the

case was set for trial and Morrissey, the bar attorney, was instructed by Judge Coleman to meet with

Delores W. and Amy B. After receiving instructions from Judge Coleman, Morrissey had an

attorney-client conference with Amy B. and Delores W. The record does not reveal what was

discussed during the attorney-client conference. However, Morrissey obtained sufficient information

during the attorney-client conference with Amy B. and Delores W. to conclude that what he thought

was in Delores W.'s best interest differed from what Delores W. and Amy B. thought was in Delores

W.'s best interest. After the October 3, 2000 attorney-client conference, Morrissey stated on the

record, that he had a conflict, therefore, he was not appointed by Judge Coleman as Delores W.'s attorney but as her GAL. Two years later, on December 4, 2002, when Judge Daly revisited the issue of Morrissey acting as Delores W.'s attorney, Morrissey explained that he could not act as Delores W.'s attorney and GAL because he had a conflict and if asked to act as her attorney and GAL he would be advocating two contradictory positions. Therefore, while the Juvenile Court Act empowered the juvenile court to appoint Morrissey as Delores W.'s attorney (705 ILCS 405/1-5 (West 1998)), it did not empower the juvenile court to appoint a GAL for Mark W.'s mother and, once Morrissey had an attorney-client conference with Delores W. and Amy B., he was prohibited from participating as a GAL in his prospective client's termination of parental rights case.

First, we find that because Delores W. and Amy B. met and talked with Morrissey and were obtaining legal advice from Morrissey, an attorney-client relationship existed. See In re Estate of Busse, 332 Ill. App. 258, 264 (1947). Next we find that the communications between Morrissey, Delores W. and Amy B. were privileged because Delores W. and Amy B. were seeking legal advice from Morrissey related to the termination of Delores W.'s parental rights. Champion v. McCarthy, 228 Ill. 87, 98 (1907). We note that the general rule is that where a communication between an attorney and client takes place in the presence of a third party such communication is not privileged unless the third person who was present was acting as the agent or representative of the client. See Dickerson v. Dickerson, 322 Ill. 492, 499 (1926). We hold that, although a third party was present, because Amy B. was acting as Delores W.'s plenary guardian, Morrissey's communications with Delores W. and Amy B. were privileged. Dickerson, 322 Ill. at 499. The final question we must answer is whether Morrissey's communications with Delores W. and Amy B. were privileged even

though an order was not entered appointing Morrissey as Delores W.'s attorney on the morning of October 3, 2000. The answer to this question is yes. In Thorp v. Goeway, 85 Ill. 611 (1877), a client consulted with an attorney but the attorney and client were unable to agree on the attorney's fee. Thorp, 85 Ill. at 615. In spite of the fact the attorney was not employed, the Thorp court held that their communications were privileged and that the attorney had no right to disclose the client's confidential communications. We hold, following Thorp, that even though Judge Coleman did not enter an order appointing Morrissey to act as Delores W.'s attorney, because Morrissey conferred with Delores W. and her plenary guardian, their confidential communications were privileged and Morrissey had no right to disclose the facts and information revealed during their communications or to use the information revealed to take a position adverse to Delores W.'s interest while acting as Delores W.'s GAL. See Thorp, 85 Ill. at 615.

The aforementioned cases establish that Illinois common-law prohibited Morrissey from using the confidential information that he acquired while consulting with Delores W. and Amy B. Under Illinois common-law, the attorney-client privilege is an evidentiary privilege that provides limited protection to communications from clients by prohibiting their unauthorized disclosure in judicial proceedings. In re Marriage of Decker, 153 Ill. 2d 298, 312 (1992). The attorney-client privilege is one of the oldest privileges for confidential communications known to the common law. Decker, 153 Ill. 2d at 312, citing Upjohn Co. v. United States, 449 U.S. 383, 389, 66 L. Ed. 2d 584, 591, 101 S. Ct. 677, 682 (1981). The purpose of the privilege is to enable a person to consult freely and openly with an attorney without any fear of compelled disclosure of the information communicated. Decker, 153 Ill. 2d at 312-13. The attorney-client privilege has been described as being essential

" 'to the proper functioning of our adversary system of justice.' " Decker, 153 Ill. 2d at 313, quoting United States v. Zolin, 491 U.S. 554, 562, 105 L. Ed. 2d 469, 485, 109 S. Ct. 2619, 2626 (1989). In addition to the attorney-client privilege, there exists the attorney's rule of confidentiality contained in Rule 1.6 of the Illinois Rules of Professional Conduct. 155 Ill. 2d R. 1.6; Decker, 153 Ill.2d at 314. Rule 1.6 encompasses the attorney-client evidentiary privilege as well as the attorney's fiduciary duty to his client. Decker, 153 Ill. 2d at 314. Rule 1.6 provides that "a lawyer shall not, during or after termination of the professional relationship with the client, use or reveal a confidence or secret of the client known to the lawyer unless the client consents after disclosure". 155 Ill. 2d R. 1.6(a). There is no evidence in the record that Delores W. or Amy B. authorized Morrissey to use the information he obtained during their attorney-client conference. Unlike the evidentiary attorney-client privilege, the rule of confidentiality applies not only during judicial proceedings, but at all times to a client's secrets as well as confidences. Decker, 153 Ill. 2d at 314. Accordingly, Delores W.'s attorney-client privilege and the attorney's rule of confidentiality contained in Rule 1.6 of the Illinois Rules of Professional Conduct were violated when Morrissey was permitted to act as Delores W.'s GAL.

The dissent states that it agrees with the majority, but does not join the majority because she believes that the due process violation in this case was harmless error because of the overwhelming evidence of Delores W.'s unfitness. The majority, however, does not find that there is a due process violation. In fact, the majority specifically states that there is no due process violation. The majority finds that the termination proceedings were fundamentally flawed because of Morrissey's conflict and continued representation of Delores W. People v. Stoval, 40 Ill. 2d 109, 113 (1968) ("[S]ound policy disfavors the representation of an accused, especially when counsel is appointed, by an attorney with

possible conflict of interests.") We note that in actual conflict of interest situations the party "is never required to prove that his attorney's deficiencies did not constitute harmless error." People v. Hardin, 217 Ill. 2d 289, 302 (2005), quoting People v. Spreitzer, 123 Ill. 2d 1, 18-19 (1988) (a defendant is not required to prove that the conflict contributed to his conviction); see also In re S.G., 347 Ill. App. 3d 476, 480-81 (2004) (a party complaining of a conflict of interest need not show that her counsel's performance was affected by the conflict; the party does not have to demonstrate prejudice for a reversal). Because we have not found a due process violation and because a party is not required to prove harmless error where there is an actual conflict of interest, the dissent's reasoning is flawed. Finally, because the trial court proceedings were fundamentally flawed, we did not reach the question of whether Delores W. or Amy B., Delores W.'s plenary guardian or representative[3] and the custodian of Mark W.,[4] was unfit to parent Mark W.

Conclusion

In conclusion, we hold: (1) that the Juvenile Court Act did not empower the juvenile court to appoint a GAL for Delores W., a mentally disabled adult who is a party to a termination of parental rights proceeding; (2) that if a juvenile court judge is going to appoint a GAL for a mentally disabled adult, it must be done pursuant to the Probate Act; (3) that the juvenile court did not invoke the Probate Act to revoke the letters of office of Amy B. in order to appoint another guardian or GAL

---

[3] "Legal Disability. If a party is declared to be a person under legal disability, *** the prosecution or defense shall be maintained by his or her representative ***." 735 ILCS 5/2-1008(c) (West 1998).

[4] "The guardian of the person shall have custody of the ward and the ward's minor and adult dependent children ***. " 755 ILCS 5/11a-17(a) (West 1998).

for Delores W., the mentally disabled adult; and (4) that Morrissey, the GAL, had a conflict and violated Delores W.'s attorney-client privilege and the attorney's rule of confidentiality because he used privileged and confidential information to make arguments and to take positions in the juvenile court that were adverse to Delores W.'s interests.

The order terminating Delores W.'s parental rights and appointing a guardian to consent to Mark W.'s adoption is reversed. This cause is remanded to the circuit court for further proceedings consistent with this opinion.

Reversed and remanded with directions.

O'BRIEN, J., concurs.

O'MARA FROSSARD, J., dissents.

JUSTICE O'MARA FROSSARD, dissenting:

I respectfully dissent because the violation of due process in the factual context of the instant case is harmless error. As noted by the majority, "[T]he United States Supreme Court [has] stated that the interest of natural parents in the care, custody, and management of their children is a fundamental liberty interest protected under the fourteenth amendment." *In re K.C.*, 323 Ill. App. 3d at 849, quoting *In re B.C.*, 247 Ill. App. 3d 803, 806 (1993), and citing *Santosky v. Kramer*, 455 U.S. 745, 747-48, 71 L. Ed. 2d 599, 603, 102 S. Ct. 1388, 1391-92 (1982); Slip op. at 25. Procedural due process constrains government action that deprives individuals of fundamental liberty

and property interests. *Mathews v. Eldridge*, 424 U.S. 319, 332, 47 L. Ed. 2d 18, 31, 96 S. Ct. 893, 901 (1976). In the instant case, the State was required to provide Delores W. with fair process before terminating her parental rights and depriving her of that fundamental liberty interest protected by the fourteenth amendment. For the reasons articulated by the majority, the State failed to do so and violated Delores W.'s due process rights.

However, in the instant case, the evidence overwhelmingly demonstrated that Delores W. was unfit and that it was in the best interest of Mark W. for the trial court to terminate Delores W.'s parental rights to Mark W. An error may be harmless if overwhelming evidence supports the order of the trial court. *In re Kenneth F.*, 332 Ill. App. 3d 674, 680 (2002); *People v. Mitchell*, 152 Ill. 2d 274, 326 (1992) ("Even assuming that the trial court on remand would find an illegal seizure and suppress defendant's confession, we find that the other evidence of defendant's guilt introduced at trial is so overwhelming as to make the introduction of defendant's confession harmless error").

With respect to Amy B., the record overwhelmingly supported the disposition by the trial court in the instant case. It should be noted that in the past year, based on a theory of anticipatory neglect as to Mark W., this same appellate court panel regarding a sibling of Mark W., namely, Paula W., affirmed an adjudication and disposition by the juvenile court. *In re Paula W.*, No. 1-05-2674 (2006) (unpublished order under Supreme Court Rule 23). As to Delores W. and Amy B., the juvenile court found that Paula W., sibling of Mark W., was abused and neglected pursuant to sections 2-3(1)(b) and 2-3(2)(ii) of the Juvenile Court Act of 1987 (the Act) (705 ILCS 405/2-3(1)(b), (2)(ii) (West 1998)), in that Paula W. was exposed to an injurious environment and a

substantial risk of physical injury. Amy B. appealed that adjudication. We affirmed that adjudication. *Paula W.*, slip op. at 15. The juvenile court entered a disposition order adjudicating Paula W. a ward of the court. Amy B. appealed that adjudication. We affirmed that disposition order. *Paula W.*, slip op. at 15. The juvenile court found Paula W. was neglected because her environment was injurious to her welfare, that she was abused because she was at substantial risk of physical injury, and that she was dependent because she was without parent due to her mother, Delores W.'s mental disability and due to her grandmother, Amy B.'s refusal to help the situation. In affirming the juvenile court we relied on the theory of anticipatory neglect recognizing that children have a probability to be subject to neglect or abuse because they reside with an individual who has been found to have neglected or abused another child. *In re K.T.*, 361 Ill. App. 3d 187, 205 (2005), citing *In re Arthur H.*, 212 Ill. 2d 441, 468 (2004). *Paula W.*, slip op. at 10.

In our order as to Paula W., the other child subject to abuse or neglect whom we discussed in addressing the issue of anticipatory neglect was Mark W., the minor-respondent in the instant case. In that order we detailed the evidence of abuse and neglect of Mark W. including evidence that Mark W. was removed from Delores W. after she tried to stuff toys down his throat and hit him over the head with a hammer. *Paula W.*, slip op. at 11. We noted that Mark W. was removed from Delores W.'s care and placed in Amy B's care and, shortly thereafter, "while in the care of Amy B., cuts, welts, and bruises, including a burn on his stomach and foot, were found on Mark W.'s extremities." *Paula W.*, slip op. at 11. We noted the juvenile court's finding that Delores W. and Amy B. were both unable and unwilling to protect the child. *Paula W.*, slip op. at 11. In relying on the theory of

anticipatory neglect based on the circumstances surrounding Mark W.'s abuse and neglect, we concluded: "The circumstances have not changed. The evidence establishes that Paula W. was at a probable and substantial risk of harm as a result of neglect because she lacked care, was exposed to an injurious environment, and was at a substantial risk of injury." *Paula W.*, slip op. at 12. Accordingly, we affirmed the juvenile court's order adjudicating Paula W. a ward of the court. *Paula W.*, slip op. at 15.

The circumstances regarding Mark W. that we relied on in applying the principle of anticipatory neglect to Paula W.'s case have not changed. In the instant case, the record reflects that Mark W. was neglected due to exposure to an injurious environment and was abused due to exposure to a substantial risk of physical injury. Delores W. has an extensive psychiatric history of mental illness and depression. She is mentally retarded and developmentally delayed. She suffers from panic disorder, acute psychosis, anxiety and depression. The record reflects Amy B., the legal guardian of Delores W., failed to ensure that Delores W. was supervised at all times, resulting in Delores W. hitting Mark W. and putting plastic toys in Mark W.'s mouth. As reflected by the service plans contained in the record, there was very little progress made by either Delores W. or Amy B. As of February 2005, the only service that Delores W. and Amy B. had completed was in-home parenting classes. Amy B. did not wish to participate in reunification services because she did not believe she needed to engage in such services.

The record reflects Mark W. has been placed in a stable, loving foster home since he was 2 years old and he will be 9 years old on July 1, 2007. Since residing in the foster home    Mark W.'s developmental delays have improved so much that he no longer requires therapy. He has

bonded to his foster parent, her extended family, and her friends.

A close review of the record reflects the evidence overwhelmingly supports the trial court's termination order. For the reasons previously discussed, the error in the instant case was harmless. I respectfully dissent.