Docket No. 104168.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

---

*In re* MARK W., a Minor (The People of the State of Illinois, Appellant, v. Delores W. *et al.*, Appellees).

*Opinion filed April 3, 2008.*

JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, Fitzgerald, Kilbride, Garman, and Karmeier concurred in the judgment and opinion.

## OPINION

At issue in this appeal is whether the circuit court of Cook County erred during a hearing on termination of parental rights when it appointed a guardian *ad litem* for a mentally disabled mother who already had a plenary guardian of the person. The appellate court concluded that the appointment of the guardian *ad litem* rendered the termination proceeding "fundamentally flawed" and reversed the judgment of the circuit court terminating the mother's parental rights. 371 Ill. App. 3d 81. For the reasons that follow, we reverse the judgment of the appellate court and remand the cause to that court for further proceedings.

## Background

In August of 1997, the circuit court of Cook County entered an order pursuant to section 11a–12 of the Probate Act of 1975 (755 ILCS 5/11a–12 (West 2006)) appointing Amy B. plenary guardian of the person for her daughter, Delores W. The order indicated that Delores was "mentally handicapped" with "mild to moderate retardation" and that she functioned at a third-grade level. Thereafter, in July of 1998, Delores gave birth to a son, Mark W.

In April of 1999, when Mark was approximately nine months old, the Illinois Department of Children and Family Services (DCFS) received a report that Delores had shoved a plastic toy into Mark's mouth and throat, that she had hit him on the head with a television remote control several times, and that she had attempted to choke Mark when he continued to cry. Mark was taken into protective custody and placed in foster care with his grandmother, Amy.

On April 8, 1999, the State filed a petition for adjudication of wardship pursuant to section 2–13 of the Juvenile Court Act of 1987 (705 ILCS 405/2–13 (West 1998)) and a motion for temporary custody (see 705 ILCS 405/2–9, 2–10 (West 1998)). The petition and motion alleged that Mark was neglected due to an injurious environment (see 705 ILCS 405/2–3(1)(b) (West 1998)) and that he was abused because he faced a substantial risk of physical injury (see 705 ILCS 405/2–3(2)(ii) (West 1998)).

On April 9, 1999, the circuit court awarded temporary custody of Mark to DCFS. Mark remained in the care of Amy until July of 1999, when he was removed from Amy's care because of concerns about her parenting skills and fears that Mark was at risk of being harmed. According to documents generated by DCFS, Mark had what appeared to be burns on his stomach and toe that Amy was unable to explain. Mark was placed with foster parents from July of 1999 to June of 2000. He was then placed with a foster parent, Michelle N., with whom he remains to the present day.

After several continuances, the State's petition for adjudication of wardship was set for trial on October 3, 2000. On that date, however, the circuit court was informed that, despite several previous attempts to retain representation, Delores did not have an attorney. Aware that she was disabled, the court expressed an intent to appoint a bar attorney as both attorney and guardian *ad litem* for Delores. The case

was then passed so that the bar attorney for the day, Raymond Morrissey, could speak with Delores and Amy. When the case was recalled, Morrissey told the court the following:

> "Your Honor, Ray Morrissey. I am the bar attorney today, and I have attempted to speak with the mother along with her guardian. The guardian is not present at this time. She has made it known emphatically clear that she does not want me to represent her daughter as attorney or guardian, and that she wants to hire a private attorney for her daughter.
>
> ***
>
> *** I have talked to the mother, and I also explained to the guardian that there may be a conflict between what she feels is in the best interest of her daughter and what I feel is the best interest, and then she stopped me and she said: I want to hire a private attorney for my daughter.
>
> ***
>
> I have no problem with accepting appointment as the guardian. I am just not sure if she [Amy] as a legal guardian would have a right to hire a private attorney for her daughter."

After listening to Morrissey's statement, and after questioning Delores, the circuit court stated that it would give Amy time to hire private counsel. The court then appointed Morrissey guardian *ad litem* for Delores.

On October 10, 2000, the circuit court entered an order amending the petition for adjudication of wardship to include an allegation that Mark was dependent due to the physical or mental condition of his parent, guardian or custodian. See 705 ILCS 405/2–4 (West 1998). On November 27, 2000, following an adjudicatory hearing (see 705 ILCS 405/2–21 (West 1998)), the circuit court found that Mark was a dependent child, due to the mental condition of his mother. A dispositional hearing was held on March 29, 2001 (see 705 ILCS 405/2–22 (West 1998)), and Mark was made a ward of the court.

Shortly thereafter, in June of 2001, the appellate court filed its decision in *In re K.C.*, 323 Ill. App. 3d 839 (2001). *In re K.C.* held that the State must name a plenary guardian of a parent as a party-respondent in a petition for adjudication of wardship. In order to comply with the decision, on March 15, 2002, the circuit court

-3-

vacated the adjudicatory and dispositional orders that had previously been entered in the case. The State's petition for adjudication of wardship was then amended to add Amy as a respondent and she was given proper notice of the proceedings.

On December 9, 2002, the circuit court revisited the issue of Delores' representation, asking Morrissey if he would accept appointment as both attorney and guardian *ad litem* for Delores. Morrissey declined, stating that such an appointment would create a conflict of interests:

> "I would object for a couple of reasons. Firstly, I was discharged as her attorney. My independent standing all the way through, and I was hoping I had made it clear every time I appeared on the case, I was just appointed as her guardian, not as her attorney and guardian. Correct, I was appointed as her attorney and guardian but I was fired by Amy [B.]. So for me to be reappointed I think is a conflict on the case.
>
> Also, if your Honor saw fit to appoint me on the case today and we did proceed, there were a whole different set of issues that I have to deal with. In this particular case there's a strong conflict, as we say, bifercation [*sic*] between my role as guardian and my role as attorney. I would be advocating two contradictory positions. I don't think that would be in the best interest of my client at this time. So, I'd ask the matter be passed for appointment of private attorney."

Following Morrissey's comments, the court appointed attorney Mark Kusatzky as Delores' counsel. Morrissey continued as Delores' guardian *ad litem*.

In January of 2003, the circuit court held a second adjudicatory hearing and found that Mark was abused and neglected. Following a second dispositional hearing in March 2003, the court found that Delores, Amy, and Mark's father[1] were all unable and unwilling for reasons other than financial circumstances to care for Mark. The court made Mark a ward of the court and appointed the DCFS guardian administrator as his guardian. In January of 2004, the court held a

---

[1] Mark's father did not appeal the termination order and is not a party to this appeal.

permanency planning hearing and found that Delores had not made any progress toward the goal of returning home. The court then entered a permanency goal of substitute care pending termination of parental rights.

On April 27, 2004, the State filed a supplemental petition for appointment of a guardian with the right to consent to adoption, alleging that Delores was unfit and that it would be in Mark's best interests to terminate parental rights. The termination hearing began on November 9, 2004. Neither Delores nor Amy appeared in court at any time during the hearing. However, both women were represented by their attorneys and Morrissey was present as guardian *ad litem* for Delores.

During the unfitness portion of the termination hearing, evidence was introduced which showed that Delores had failed to participate in DCFS's various assessment and reunification services and had failed to make progress toward reunification with Mark. Evidence was also introduced which showed that Amy had repeatedly prevented Delores from following her service plans, that she had failed to provide consent, as Delores' plenary guardian, for Delores to receive various services,[2] that she had been hostile to service providers, and that her behavior had impeded efforts to reunify Delores with Mark.

At the close of the unfitness portion of the termination proceeding, the attorneys for Delores and Amy argued against termination of Delores' parental rights. Morrissey made a brief statement to the contrary, asserting that Delores' parental rights should be terminated. As evinced by a review of the record as a whole, Morrissey's position was that, in light of assessments made by DCFS, the only way Delores could be reunited with Mark would be if she participated in an assisted living program that provided her with the necessary support and services for raising Mark. Amy, however, refused to permit Delores to participate in such a program. Thus, in

---

[2] From the outset of the proceedings, Morrissey took the position that he had no authority, as guardian *ad litem*, to provide consents to receive services or releases for information on Delores' behalf. His role was solely to apprise the court as to what he believed was in Delores' best interests with respect to Mark.

order to have a chance of reuniting with her child, Delores would have to curtail, and perhaps sever, her relationship with Amy. Faced with the options of Delores ending her connection with Mark, a child with whom she had an attenuated relationship, or severing her connection with her mother, a woman with whom Delores was inextricably bound, Morrissey concluded it would be in Delores' best interests to terminate her parental rights.

In April 2005, the circuit court found Delores unfit based upon her failure to maintain a reasonable degree of interest, concern, or responsibility as to Mark's welfare (see 750 ILCS 50/1(D)(b) (West 2000) and based upon her failure to make reasonable progress toward reunification (see 750 ILCS 50/1(D)(m) (West 2000). Thereafter, the court found it was in Mark's best interests to terminate Delores' parental rights. On July 12, 2005, the circuit court entered an order finding Delores unfit, terminating her parental rights and appointing the DCFS guardian administrator as guardian with the right to consent to adoption.

Amy appealed. Before the appellate court she raised four issues: (1) Delores' due process rights were violated because Morrissey recommended that her parental rights be terminated; (2) the circuit court's findings at the termination of parental rights hearing were against the manifest weight of the evidence; (3) the circuit court did not have jurisdiction to terminate Delores' parental rights because Mark was illegally removed from Amy's care in 1999; and (4) the circuit court committed reversible error when it barred certain witnesses from testifying. The appellate court did not reach these issues, however, choosing instead to consider, *sua sponte*, whether the circuit court's appointment of Morrissey as guardian *ad litem* was appropriate.

The appellate court held that, following Amy's appointment as Delores' plenary guardian of the person, Morrissey's appointment as guardian *ad litem* was unauthorized under either the Juvenile Court Act or the Probate Act. The appellate court further held that the termination of parental rights hearing was "fundamentally flawed" and the judgment terminating Delores' parental rights had to be reversed, both because Morrissey revealed confidential information obtained during his initial conversation with Amy and Delores and because he was operating under an actual conflict of interest during

the proceedings. One justice dissented, concluding that any error during the termination hearing was harmless, as the evidence overwhelmingly established Delores' unfitness as a parent. 371 Ill. App. 3d at 102 (O'Mara Frossard, J., dissenting). We granted the State's petition for leave to appeal. 210 Ill. 2d R. 315.

Analysis

Two principal issues are raised by the appellate court's decision in this case: (1) Does the circuit court have the authority, as a general matter, to appoint a guardian *ad litem* for a mentally disabled parent during a termination of parental rights hearing when the parent already has a plenary guardian of the person? and (2) Assuming the circuit court has such authority, must the judgment of the circuit court terminating Delores' parental rights in this case nevertheless be reversed because Morrissey revealed confidential information and was operating under a conflict of interest? We address these issues in turn.

A guardian *ad litem* functions as the "eyes and ears of the court" and not as the ward's attorney. *In re Guardianship of Mabry*, 281 Ill. App. 3d 76, 88 (1996), citing *In re Marriage of Wycoff*, 266 Ill. App. 3d 408, 415-16 (1994). The traditional role of the guardian *ad litem* is not to advocate for what the ward wants but, instead, to make a recommendation to the court as to what is in the ward's best interests. *Mabry*, 281 Ill. App. 3d at 88. The role of the guardian *ad litem* is thus in contrast to the role of the plenary guardian of the person appointed pursuant to the Probate Act. Under section 11a–17 of the Probate Act, the plenary guardian makes decisions on behalf of the ward and must, in general, conform those decisions "as closely as possible to what the ward, if competent, would have done or intended under the circumstances." 755 ILCS 5/11a–17(e) (West 2000). See also *In re Marriage of Burgess*, 189 Ill. 2d 270, 278-79 (2000) (guardian must generally "make decisions on behalf of a ward in accordance with the ward's previously expressed wishes").

In the case at bar, the appellate court concluded that the circuit court had no authority, under either the Juvenile Court Act or the Probate Act, to appoint a guardian *ad litem* for Delores. Before this court, the State points to various statutory provisions which, it contends, support by implication the circuit court's authority to

-7-

appoint a guardian *ad litem*. The State acknowledges, however, that no provision speaks directly to the situation presented here. At the same time, Amy acknowledges that no statutory provision expressly forbids the appointment of a guardian *ad litem*. The question, then, is whether in the absence of controlling statutory authority, the circuit court has the authority to make such an appointment. We believe it does.

Delores was adjudicated a disabled person under the Probate Act in 1997. A disabled person is viewed as "a favored person in the eyes of the law" and is entitled to vigilant protection. *In re Estate of Wellman*, 174 Ill. 2d 335, 348 (1996) ("[t]he trial court protects the disabled person as its ward, vigilantly guarding the ward's property and viewing the ward as a favored person in the eyes of the law"). Once a person is adjudicated disabled, that person remains under the jurisdiction of the court, even when a plenary guardian of the person has been appointed. *In re Estate of Nelson*, 250 Ill. App. 3d 282, 286-87 (1993). The court has a duty to judicially interfere and protect the ward if the guardian is about to do anything that would cause harm. *Nelson*, 250 Ill. App. 3d at 287. To fulfill this duty, the court's authority is not limited to express statutory terms. As our appellate court has held:

> "When, as in this case, a court is charged with a duty to protect the interests of its ward, we believe that by implication it has such powers, although not expressly given by the statute vesting the court with jurisdiction over the ward, as are necessary to properly discharge that duty ***." *Nelson*, 250 Ill. App. 3d at 287-88 (recognizing the authority of the circuit court to appoint a guardian *ad litem* to investigate an allegation that a ward was neglected).

See also *In re Serafin*, 272 Ill. App. 3d 239, 244 (1995) ("The circuit court is charged with a duty to protect the interests of its ward and has, by statute and otherwise, those powers necessary to appoint a guardian *ad litem* to represent the interests of the respondent during the court's exercise of its jurisdiction").

In accordance with this precedent, and given Delores' status as a disabled person entitled to the utmost protection of the courts, we have little difficultly concluding that the circuit court had the

authority to appoint a guardian *ad litem* to make a recommendation to the court as to what was in Delores' best interests.

The appellate court, however, was also critical of the circuit court's appointment of Morrissey as guardian *ad litem* because the court did not first revoke Amy's letters of office. 371 Ill. App. 3d at 97-98. As noted, neither the Juvenile Court Act nor the Probate Act addresses the situation presented here, and we think it would be unwise to impose a requirement, as a matter of law, that the circuit court must revoke the plenary guardian's letters of office in situations such as this. The facts of this case illustrate the point.

At various times during the proceedings in this case, the circuit court expressed concern about Amy's decisions not to permit Delores to participate in reunification services with DCFS. At one point, for example, the court noted,

> "If the record before me were clear that [Amy] is making a decision about D[e]lores because she feels that D[e]lores simply cannot handle the parenting, is not capable of managing with a child, I would have complete respect for that. *** [But] [t]here have been things that have been said throughout the course of both of these proceedings, Mark and Paula's[3] that cause me some concern that while that may be a factor[,] *** there may be other factors as well that [are] causing [Amy] to have perhaps clouded judgment on the issue.
>
> * * *
>
> My concern is that Ms. Amy [B.], as a result of the removal of Mark, has become so disenchanted with our system and has become so disaffected by the system that she has clouded judgment when it comes to what is best for D[e]lores."

While noting that Amy's decisionmaking appeared to be "clouded by her unhappy relationship with the agency and with our court system," the circuit court at the same time stated that it had no reason to believe that Amy was not providing adequately for Delores' day-to-

---

[3] Paula was another child of Delores who was subject to juvenile court proceedings. See 371 Ill. App. 3d at 104 (O'Mara Frossard, J., dissenting).

day care. The court also made it clear that it did not want to drive a wedge between Amy and Delores because doing so would be harmful to Delores' interests.

Appointing a guardian *ad litem* without first revoking the plenary guardian's letters of office was appropriate in these circumstances. Simply because the circuit court may find it desirable, in a particular case, to appoint a guardian *ad litem* to obtain a recommendation regarding a ward's best interests, it does not follow that the plenary guardian of the ward is unfit or must be discharged. Indeed, where as here, the plenary guardian is the ward's own parent, discharging the guardian could be contrary to the ward's best interests. We conclude, therefore, that there is no need, as a matter of law, to revoke the plenary guardian's letters of office before appointing a guardian *ad litem* in situations such as presented here.

The appellate court concluded that the appointment of Morrissey as guardian *ad litem* was unnecessary in this case, stating: "we find no evidence in the record of a need for the juvenile court to appoint a GAL to protect Delores W.'s interests." 371 Ill. App. 3d at 96. In so finding, the appellate court made no mention of the circuit court's concerns regarding Amy's decisionmaking. Nor did the appellate court acknowledge the many instances when Amy prevented Delores from engaging in reunification services, refused to sign releases of information, was antagonistic toward the agencies and individuals working with the family, and compromised Delores' chances for reunification with Mark. In our view, there is ample evidence of record to support the circuit court's appointment of Morrissey as guardian *ad litem* during the termination proceeding.

The appellate court also concluded, however, that the circuit court erred in appointing Morrissey because he violated the attorney-client privilege and the rules of professional conduct. According to the appellate court, Morrissey "violated Delores W.'s attorney-client privilege and the attorney's rule of confidentiality because he used privileged and confidential information to make arguments and to take positions in the juvenile court that were adverse to Delores W.'s interests." 371 Ill. App. 3d at 102.

The appellate court did not find that Morrissey disclosed, or attempted to disclose, confidential information in court or elsewhere. Rather, the appellate court's position was that, based on statements

he made in court, Morrissey must necessarily have obtained confidential information during his initial conversation with Delores and Amy on October 3, 2000, and that he used this information to advocate a position adverse to Delores' interests. As the appellate court stated:

> "After receiving instructions from Judge Coleman, Morrissey had an attorney-client conference with Amy B. and Delores W. The record does not reveal what was discussed during the attorney-client conference. However, Morrissey obtained sufficient information during the attorney-client conference with Amy B. and Delores W. to conclude that what he thought was in Delores W.'s best interest differed from what Delores W. and Amy B. thought was in Delores W.'s best interest. After the October 3, 2000, attorney-client conference, *Morrissey stated on the record that he had a conflict*, and, therefore, he was not appointed by Judge Coleman as Delores W.'s attorney but as her GAL."[4] (Emphasis added.) 371 Ill. App. 3d at 99.

In other words, according to the appellate court, Morrissey obtained confidential information from Delores and Amy on October 3, 2000, under the guise of an attorney-client conversation, immediately formed a personal opinion based on this information regarding what would be in Delores' best interests, and then stated to the court that his personal opinion was at odds with what Delores and Amy believed was in Delores' best interests. From this, the appellate court concluded that Morrissey should not have accepted appointment as guardian *ad litem* and that he violated the attorney-client privilege and rules of professional responsibility in doing so. We disagree.

After speaking with Delores and Amy, Morrissey did not tell the circuit court that he had conflict. Rather, he stated the following:

> "I have talked to the mother, and I also explained to the guardian that there *may* be a conflict between what she feels is in the best interest of her daughter and what I feel is the

---

[4] Contrary to the appellate court's statement, Morrissey declined appointment as Delores' attorney because Amy did not want him to represent her. Morrissey's position was that, as plenary guardian of the person, it was Amy's right to select Delores' counsel.

> best interest, and then she stopped me and she said: I want to hire a private attorney for my daughter." (Emphasis added.)

The most reasonable reading of this statement is that Morrissey simply described, in a general manner, his role as potential attorney and guardian *ad litem* to Delores and Amy. As the circuit court had also done, Morrissey explained to Amy that his role would be independent of her, and that there might come a time when they would disagree as to Delores' best interests. At that point, Amy stopped the conversation and nothing further was discussed. This reading comports with Morrissey's additional statement to the court that he had only "attempted to speak with the mother along with her guardian." In addition, unlike the appellate court's interpretation, our reading of the record comports with the realities of the situation: it is unlikely that Morrissey formed an opinion regarding what would be in Delores' best interests–a person he had never met before–based on a single conversation at the courthouse.

In any event, and most importantly, at no time during the circuit court proceedings did Amy object to Morrissey's appointment, and at no time were any factual findings made by the circuit court regarding Morrissey's conversation with Delores and Amy. On this record, it would be speculative at best to conclude that the conversation held on October 3, 2000, included confidential information, or that it fell within the type of communication protected by the attorney-client privilege. See, *e.g.*, *In re Himmel*, 125 Ill. 2d 531, 541 (1988) (the attorney-client privilege exists, where, *inter alia*, legal advice of any kind is sought from a professional legal adviser in his capacity as such, and the communication at issue relates to that purpose). We decline to hold that Morrissey violated the attorney-client privilege or the rules of professional conduct based on speculation.

In finding that Morrissey had an actual conflict of interest, the appellate court also referenced Morrissey's statements on December 9, 2002, when he declined appointment as Delores' counsel. As the record makes clear, Morrissey did not say he had an actual conflict based on his having served as both attorney and guardian *ad litem*. Rather, he stated there was a potential for conflict, which would only be realized if he were appointed Delores' attorney. Morrissey was never appointed Delores' attorney. Consequently, we conclude that

Morrissey was not operating under a conflict of interests, and the appellate court erred in holding to the contrary.

Finally, we note that the Cook County public guardian, as attorney for Mark W. and appellee in this case, has asked that in addition to reversing the appellate court's judgment, we also "review the juvenile court's findings and affirm the termination of parental rights order." The public guardian stresses the time-sensitive nature of child custody proceedings and notes that Mark W. has been in the juvenile court system for over eight years.

We understand the public guardian's request to be that we consider the four issues raised by Amy in her initial appeal from the circuit court that were left unaddressed by the appellate court. We note, however, that the State, as appellant before this court, neither has briefed these issues nor raised them at oral argument. Further, in its prayer for relief, the State has requested that the cause be remanded to the appellate court, stating: "Given the manner in which the Appellate Court addressed only the issue that it saw, without addressing the issues raised by [Amy], the People understand that, despite the fact that this appeal involves the interests of a child, this matter must be remanded to the Appellate Court with directions to address any issues raised by Amy's appellate court brief that are not resolved by this Court's opinion." Under these circumstances, we conclude that remand to the appellate court is appropriate.

Nevertheless, we share the public guardian's concern regarding the time-sensitive nature of this proceeding. Accordingly, we direct the appellate court to file its judgment in this matter within 60 days of the issuance of this court's mandate.

Conclusion

For the foregoing reasons, the judgment of the appellate court is reversed. The cause is remanded to that court to address those issues that were initially raised by Amy in her appeal from the judgment of the circuit court terminating Delores' parental rights. The appellate court is directed to file its judgment in this matter within 60 days of the issuance of this court's mandate.

*Appellate court judgment reversed;*

-13-

*cause remanded with directions.*