2021 IL App (1st) 200945-U

THIRD DIVISION
March 17, 2021

No. 1-20-0945

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| In re ESTATE OF DONNA R. CUESTA, A PERSON WITH AN ALLEGED DISABILITY, | ) ) ) | |
| (Suzan G. Held, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Petitioner-Appellant, | ) ) | |
| v. | ) ) | 2020-P-0561 |
| | ) ) | Honorable |
| Ruben M. Garcia, | ) ) | Aicha M. MacCarthy, |
| | ) | Judge Presiding |
| Respondent-Appellee) | ) | |

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Howse and Justice Burke concurred in the judgment.

O R D E R

¶ 1    *Held*: Appellate court did not have jurisdiction to review interlocutory orders appointing a temporary guardian for a woman alleged to be disabled by Alzheimer's disease.

¶ 2    Suzan G. Held petitioned to be appointed the guardian of her aunt, Donna R. Cuesta, because she is disabled by Alzheimer's disease and no longer able to manage her person or estate. Held brings this interlocutory appeal from two orders which gave a professional caretaker a second temporary guardianship and then a third temporary guardianship during the COVID-19 pandemic and a State agency's investigation into Cuesta's circumstances. Held contends the combined

duration of the two orders exceeds 120 days, in violation of the phrase in the temporary guardianship statute that "such extension lasts no more than 120 days from the date the temporary guardian was originally appointed." 755 5/11a-4(b)(2) (West 2018). The temporary guardian, Midwest Care Management Services (Midwest Care), responds that this court lacks jurisdiction to review the interlocutory orders. As to the merits of Held's appeal, Midwest Care responds that there is no statutory bar to entering additional guardianship orders, particularly during the extraordinary circumstances of a pandemic, and that Held has failed to address how leaving Cuesta without the protection of any guardian would be in Cuesta's best interests.

¶ 3    Cuesta, who was born in 1935, has a daughter, a son, and no living spouse. She also has a niece, Held, and a sister. As set out below, in early 2020, Cuesta's daughter, son, and niece each filed cross-petitions to be appointed the guardian of Cuesta's person and/or estate and each alleged that Cuesta was disabled by Alzheimer's disease. *See* 755 ILCS 5/11a-8 (West 2018) (providing for a petition for adjudication of disability and for appointment of a guardian of the estate or the person or both).

¶ 4    On the day the first of the section 11a-8 cross-petitions was filed by Cuesta's daughter, the circuit court scheduled a hearing for February 3, 2020 to determine whether a temporary guardian should be appointed pending the daughter's petition, and scheduled the daughter's petition for hearing on March 6, 2020. 755 ILCS 5/11a-8 (West 2018). The court also appointed a Guardian *ad Litem*, Ruben M. Garcia (Garcia or GAL). *See* 755 ILCS 5/11a-10 (West 2018) (procedures preliminary to the hearing of the disability petition, including that the court "shall appoint a guardian *ad litem* to report to the court"). An investigation by Illinois' Adult Protective Services was in progress to address the daughter's concerns that Cuesta was being neglected or financially

exploited.

¶ 5    The GAL's preliminary investigation indicated that Cuesta's son had been residing with her in her home in Forest Park, Illinois for six years, she was not receiving prescribed medication, she was vulnerable to financial exploitation, and there were recent large asset transfers and new power of attorney documents. The GAL's investigation led him to petition the court to appoint Midwest Care, which is a not-for-profit agency, as Cuesta's temporary guardian, instead of appointing any of Cuesta's family members. *See* 755 ILCS 5/11a-4 (West 2018). The record does not disclose why the circuit court continued the temporary guardianship hearing from February 3, to February 14, 2020. However, on February 14, 2020, the circuit court froze Cuesta's bank accounts, suspended all powers of attorney, and granted the GAL's petition to appoint Midwest Care as Cuesta's temporary guardian. The court gave the agency limited powers and duties which were enumerated in its order–primarily to investigate and secure Cuesta's financial accounts, execute releases in accordance with the Health Insurance Portability and Accountability Act (which is commonly known as HIPAA) in order to access Cuesta's medical records, and act as Cuesta's healthcare surrogate decision maker. The temporary guardianship was to terminate 60 days later, on April 14, 2020.

¶ 6    During the 60-day period, on March 3, 2020, Held filed a cross-petition to be appointed the guardian of Cuesta's person and estate.

¶ 7    Also during March 2020, Illinois Governor J. B. Pritzker declared a State of Emergency due to the outbreak of the COVID-19 pandemic; the Illinois Supreme Court ordered that non-essential court proceedings be continued or, if possible, conducted on a remote basis; and the chief judge of the circuit court of Cook County ordered that all pending court dates, including all matters

proceeding in the circuit court's probate division, be rescheduled and continued for 30 days. The effect of the administrative orders was that Midwest Care's temporary guardianship was extended to May 14, 2020. Also during the initial 60-day temporary guardianship, on March 27, 2020, the GAL added to the pending cross-petitions filed by Cuesta's daughter and niece by filing a cross-petition seeking the appointment of Midwest Care as the guardian of Cuesta's person and the appointment of Midland Trust Company as the guardian of Cuesta's estate. Cuesta's son filed a *pro se* cross-petition, seeking guardianship over his mother's person only. The chief judge of the circuit court and the chief judge of the circuit court's probate division subsequently entered additional administrative orders which continued the expiration of the temporary guardianship until June 15, 2020. Thus, the temporary guardianship which had originally been ordered for 60 days was administratively continued to last for a total of 122 days, and there were four pending cross-petitions for guardianship over Cuesta's person and/or estate. On April 27, 2020, Held filed a new petition to be appointed Cuesta's guardian, alleging the same facts but now seeking guardianship over only Cuesta's estate.

¶ 8       The relevant facts about the second temporary guardianship are as follows. On June 10, 2020, due to the imminent lapse of the temporary guardianship, ongoing concerns about Cuesta's welfare and protection, and unabated pandemic, the GAL filed a second petition for the appointment of a temporary guardian. The next day, Cuesta's niece filed a brief in opposition, in which she contended that a temporary guardianship cannot last more than 120 days and is intended to be only interim protection until the resolution of a section 11a-8 petition for guardianship. 755 ILCS 5/11a-8 (West 2018). Held did not, however, ask the court to hear any of the four pending section 11a-8 petitions. On June 12, 2020, the circuit court granted the GAL's petition for a second

temporary guardianship. The court again enumerated the specific powers and duties it was giving the temporary guardian and it ordered that the temporary guardianship terminate on August 11, 2020. Held's appellate argument focuses on this order dated June 12, 2020. In a motion for reconsideration, Held again argued about the duration of a temporary guardianship. The GAL filed written opposition, pointing out that Held, in her pending cross-petition for guardianship, had sworn under penalty of perjury that Cuesta was disabled by dementia and yet Held had no explanation for how Cuesta's best interests would be protected if the temporary guardianship were terminated. The GAL also pointed out that Cuesta's best interests were considered paramount over Held's interests. *See* 755 ILCS 5/11a-4(a) (West 2018) ("In determining the necessity for temporary guardianship, the immediate welfare and protection of the alleged person with a disability and his or her estate shall be of paramount concern, and the interests of the petitioner, any care provider, or any other party shall not outweigh the interests of the alleged person with a disability.") The GAL also argued that there was no statutory prohibition on filing a second petition for temporary guardianship, and that, in any event, the unusual circumstances of a pandemic required flexibility in providing for Cuesta's best interests. The GAL's concluding argument was that Held had no authority or standing to act on Cuesta's behalf. Held replied in part that she was an "interested person" who was aligned with Cuesta's "selfless" son, that Cuesta's daughter had instituted the guardianship proceedings "merely *** to amend [Cuesta's] estate plan," and that the GAL was also motivated by "an economic interest." Held contended that if the temporary guardianship were terminated, Cuesta's best interests and needs would be met by her son and that it was "fanciful" to contend that Cuesta's "health" would be imperiled without the oversight of a temporary guardian. The judge who heard Held's motion for reconsideration was not the same

judge that had granted the GAL's two petitions for temporary guardianship. When the judge called Held's motion for reconsideration, the parties chose to rely on their briefs without oral argument and the court denied the motion. The judge indicated she was returning the case to the originally assigned judge, who on August 5, 2020 continued the temporary guardianship that would have lapsed on June 12, 2020, to October 10, 2020. On September 4, 2020, Held filed a notice of interlocutory appeal from the denial of her motion from reconsideration regarding the second temporary guardianship that had been entered on June 12, 2020.

¶ 9    The third temporary guardianship was the last temporary guardianship and is also at issue on appeal. Days before the expiration of the second temporary guardianship, Cuesta's daughter filed a petition on October 2, 2020, in which she nominated Midwest Care to be the temporary guardian of Cuesta's person and estate. On October 8, 2020, the GAL filed its third petition for temporary guardianship. Although the GAL's first and second petitions had been more or less the same, the third petition was updated and included more detail as to why the GAL was recommending a professional third-party guardian. The third petition incorporated various medical opinions, the Adult Protective Services investigation which concluded Cuesta was being neglected while in her son's care and that Cuesta was in need of 24-hour continuous care, and that large financial transfers had raised concerns of financial exploitation. On October 8, 2020, prior to the expiration of the second temporary guardianship, the circuit court granted the GAL's third petition, appointing Midwest Care as the temporary guardian of Cuesta's person and estate, with the order to lapse on December 7, 2020. As it had with the previous temporary guardianships, the court specified the powers and duties it was granting to Midwest Care. On November 9, 2020, Held filed a notice of appeal from this third temporary guardianship order.

1-20-0945

¶ 10    In her appeal concerning the second and third temporary guardianship orders, Held argues that Midwest Care's only purpose "is committing waste and draining *** assets" and that there is no statutory authority for the circuit court to have appointed a temporary guardian for more than 120 days. The statute Held relies on states as follows:

"Temporary guardian.

(a) Prior to the appointment of a guardian under this Article, *** the court may appoint a temporary guardian upon a showing of the necessity therefor for the immediate welfare and protection of the alleged person with a disability or his or her estate on such notice and subject to such conditions as the court may prescribe. In determining the necessity for temporary guardianship, the immediate welfare and protection of the alleged person with a disability and his or her estate shall be of paramount concern, and the interests of the petitioner, any care provider, or any other party shall not outweigh the interests of the alleged person with a disability. The temporary guardian shall have the limited powers and duties of a guardian of the person or of the estate which are specifically enumerated by court order. The court order shall state the actual harm identified by the court that necessitates temporary guardianship or any extension thereof.

(b) The temporary guardianship shall expire within 60 days after the appointment or whenever a guardian is regularly appointed, whichever occurs first. No extension shall be granted except:

(1) In a case where there has been an adjudication of disability, an extension shall be granted:

(i) pending the disposition on appeal of an adjudication of disability;

- 7 -

1-20-0945

(ii) pending the completion of a citation proceeding brought pursuant to Section 23-3;

(iii) pending the appointment of a successor guardian in a case where the former guardian has resigned, has become incapacitated, or is deceased; or

(iv) where the guardian's powers have been suspended pursuant to a court order.

(2) *In a case where there has not been an adjudication of disability, an extension shall be granted pending the disposition of a petition brought pursuant to Section 11a-8 so long as the court finds it is in the best interest of the alleged person with a disability to extend the temporary guardianship so as to protect the alleged person with a disability from any potential abuse, neglect, self-neglect, exploitation, or other harm and such extension lasts no more than 120 days from the date the temporary guardian was originally appointed.* (Emphasis added.)

The ward shall have the right any time after the appointment of a temporary guardian is made to petition the court to revoke the appointment of the temporary guardian." 755 ILCS 5/11a-4 (West 2018).

¶ 11 Midwest Care counters that we lack jurisdiction because Held's notices of appeals, opening brief, and appendix confusingly refer to different dates as the date of her appeal(s) and because Held added to the uncertainty by failing to attach the orders at issue to her notice(s) of appeal. Held responds that there is no confusion. The purpose of a notice of appeal is to inform the prevailing party that the unsuccessful litigant is seeking review. *Nussbaum v. Kennedy*, 267 Ill. App. 3d 325, 328 (1994). A notice of appeal should be considered as a whole and will be deemed sufficient to confer jurisdiction to the appellate court when the notice "fairly and adequately sets out the

judgment complained of and the relief sought, thus advising the prevailing litigants of the nature of the appeal." *Nussbaum*, 267 Ill. App. 3d at 328. A notice that is deficient in form but not substance and which causes no prejudice to an appellee is not fatal. *Nussbaum*, 267 Ill. App. 3d at 328. Notices of appeal are to be construed liberally. *Daniels v. Anderson*, 162 Ill. 2d 47, 62 (1994); *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178, 188-89 (1991). We agree that Held made numerous mistakes in her presentation, in violation of the appellate rules, but it is apparent from her two notices of appeal that she seeks review of the second and third guardianship orders on grounds that there was no statutory authority to enter those orders. Held has been making this same argument since she involved herself in the guardianship action. Based on liberal construction of the notices of appeal and the fact that Midwest Care is not arguing it was actually prejudiced by Held's presentation, we find that the notices of appeal are adequate for purposes of appellate jurisdiction.

¶ 12 Even so, Midwest Care contends that the two interlocutory orders are not appealable. It is well established that unless specifically authorized by the supreme court rules, we do not have jurisdiction to review orders that are not final judgment orders. *In re Marriage of Dougherty*, 2017 IL App (1st) 161893, ¶ 4; *Stein v. Krislov*, 405 Ill. App. 3d 538, 541 (2010) (citing Ill. Const.1970, art. VI, § 6). When an order appealed from is not a final one, and when it is not one that qualifies for an exception provided in the supreme court rules, we lack jurisdiction and must dismiss the appeal. *Stein*, 405 Ill. App. 3d at 543.

¶ 13 An order is final and appealable if it terminates the litigation between the parties on the merits, and sets, fixes, or disposes of the rights of the parties, whether upon the entire controversy or upon some definite and separate part thereof, so that if the judgment or order is affirmed, the

trial court need only execute it. *In re A.H.*, 207 Ill. 2d 590, 594 (2003) (the denial of a petition to terminate parental rights was not a final order for purposes of appeal "because it did not end the litigation of the parties on the issue of termination of parental rights and did not 'set or fix' the rights of the parties on either side of the controversy); *In re Adoption of Ginnell*, 316 Ill. App. 3d 789, 793 (2000) (an order is not final where jurisdiction is retained for matters of substantial controversy).

¶ 14    Held maintains that our jurisdiction lies under one of the exceptions enumerated within Illinois Supreme Court Rule 304 (eff. Mar. 8, 2016), which governs "Appeals from *Final Judgments that do not Dispose of an Entire Proceeding.*" (Emphasis added.) She contends that Supreme Court Rule 304(b), specifically subparagraph (1), is the basis for our interlocutory jurisdiction (Ill. S. Ct. R. 304(b)(1) (eff. Mar. 8, 2016)), because "the status of the temporary guardian to serve in excess of the 120-day statutory limit has been finally determined."

¶ 15    Rule 304 states, in relevant part:

"(b) Judgments and Orders Appealable Without Special Finding. The following judgments and orders are appealable without the finding required for appeals under paragraph (a) of this rule:

(1) A judgment or order entered in the administration of an estate, guardianship, or similar proceeding which finally determines a right or status of a party." Ill. S. Ct. R. 304(b)(1) (eff. Mar. 8, 2016).

¶ 16    The committee comments further elaborate on Rule 304(b)(1), stating:

"Subparagraph (1) applies to orders that are final in character although entered in comprehensive proceedings that include other matters. Examples are an order admitting or

refusing to admit a will to probate, appointing or removing an executor, or allowing or disallowing a claim." Ill. S. Ct. R. 304(b) (eff. Mar. 8, 2016), Committee Comments.

¶ 17 Held misconstrues the rule. Rule 304(b)(1) is not applicable because neither order that Held is challenging "finally determines a right or status of a party." Ill. S. Ct. R. 304(b)(1) (eff. Mar. 8, 2016). The orders at issue grant the GAL's requests to establish a temporary guardianship for Cuesta.

¶ 18 No right or status of the GAL has been determined by the entry of Midwest Care's temporary guardianships. A GAL functions as the "eyes and ears of the court." *In re Mark W.*, 228 Ill. 2d 365, 374 (2008). The Probate Act requires the appointment of a GAL in guardianship proceedings. 755 ILCS 5/11a-10(a) (West 2018). The statute requires the GAL to "file a written report detailing his or her observations of the respondent, the responses of the respondent to any of the inquires detailed in [the statute], the opinion of the [GAL] or other professionals with whom the [GAL] consulted concerning the appropriateness of guardianship, and any other material issue discovered by the [GAL]." 755 ILCS 5/11a-10(a) (West 2018). Thus, the GAL aids the court. The granting of the GAL's temporary guardianship petitions nominating a corporate guardian for the role did not "finally determine[] a right or status of a party" within the meaning of Rule 304(b)(1), because none of the GAL's rights or its status have been affected by the involvement of Midwest Care in Cuesta's life. Ill. S. Ct. R. 304(b)(1) (eff. Mar. 8, 2016). See also *In re Guardianship of Mabry*, 281 Ill. App. 3d 76, 88 (1996) ("the GAL represents the ward's best interests (as the GAL sees them), not [necessarily as] the ward [sees them]").

¶ 19 Furthermore, in both title and effect, each of the two orders is a temporary measure and is not a final, appealable order. The questions of whether Cuesta is disabled and the extent of the

guardianship or guardianships necessary for her wellbeing are still unanswered. In the meantime, any portions of the temporary guardianship orders are still subject to the trial court's revision or complete withdrawal. The trial court retains jurisdiction to terminate the temporary guardianship outright, to replace Midwest Care as the temporary guardian, and to revoke any of the specific powers and duties that were stated in the order appointing Midwest Care as the temporary guardian. It will not be until later in the proceedings, if there is a final adjudication of Cuesta's disability and if there is a finding of best interests necessitating the appointment of a plenary guardian, that the decision-making authority of a guardian might be expanded to cover virtually all of her personal and financial decisions. See 755 ILCS 5/11a-17 (West 2018) (setting out duties of a personal guardian of a disabled person); *In re K.C.*, 323 Ill. App. 3d 839, 849 (2001) (decision-making authority of a plenary guardian of the person under section 11a-17 is "exceedingly broad"); 755 ILCS 5/11a-18 (West 2018) (providing duties of estate guardian of a disabled person's estate). Stated in other terms, the appointment of a temporary guardian is only a preliminary step in the proceedings and matters of substantial controversy remain undecided. Held's petition for guardianship and the cross-petitions for guardianship of Cuesta's person or estate are pending. The orders Held wants reviewed are merely intermediate steps providing for Cuesta's welfare and best interests. The orders do not finally determine who will ultimately serve as Cuesta's guardian and they do not affect or forecast the outcome of any of the cross-petitions. The orders that Held argues were entered erroneously are not final, appealable orders.

¶ 20     Furthermore, Midwest Care's contention that Held could have, but failed to get 304(a) language in the appointment orders so that she could properly bring an interlocutory appeal is also incorrect. Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). Only if those orders were final, but not otherwise

- 12 -

appealable, would the addition of 304(a) language have cured that aspect of the orders. Because the orders are temporary determinations that remain subject to the trial court's revision, the addition of a Rule 304(a) finding would not make the nonfinal orders final and appealable. *Blott v. Hanson*, 283 Ill. App. 3d 656, 660 (1996) (a Rule 304(a) finding does not make a nonfinal order appealable, rather it would make a final order appealable despite other pending claims); *Viirre v. Zayre Stores, Inc.*, 212 Ill. App. 3d 505, 511 (1991) (entering Rule 304(a) language does not make an order final and appealable if the order was not already final).

¶ 21    The lack of finality is why we reject Held's alternate argument for jurisdiction. Held contends that if she must wait for the conclusion of the cross-petitions for guardianship, then the issue of a 120-day limit to temporary guardianships will have become moot. She contends appellate jurisdiction already exists because "an issue of substantial public interest is presented, [there is a need for] *** an authoritative determination for the future guidance of public officers, and there is a likelihood of future recurrence of the question ***. *People ex rel. Wallace v. Labrenz*, 411 Ill. 618, 622 (1952)." Here again, Held misunderstands the law. In *Labrenz*, two members of the Jehovah's Witness faith refused, on religious grounds, a blood transfusion for their newborn, but the trial court granted the State's petition for a guardian and authority for the guardian to consent to the transfusion. *Labrenz*, 411 Ill. at 620. After the transfusion was administered, the baby improved, the guardian was discharged, and the case was dismissed. *Labrenz*, 411 Ill. at 621-22. Thus, the case resulted in what was unquestionably a final, appealable order. However, when the parents appealed, the State contended the appeal should be dismissed as moot. *Labrenz*, 411 Ill. at 622. As a general rule, a case which has become moot will be dismissed on appeal, but an exception is made when the issue is of substantial public interest. *Labrenz*, 411 Ill. at 622. "Among

the criteria considered in determining the existence of the requisite degree of public interest are the public or private nature of the question presented, the desirability of an authoritative determination for the future guidance of public officers, and the likelihood of future recurrence of the question." *Labrenz*, 411 Ill. at 622. After analyzing the facts, the court held that the exception applied and proceeded with its review of the final order. *Labrenz*, 411 Ill. at 623. That holding does not indicate that an interlocutory order can be reviewed prior to the resolution of the case simply because the appellant files an appeal. More importantly, the mootness doctrine does not apply when a reviewing court lacks jurisdiction over the appeal in the first instance.

¶ 22    We dismiss Held's interlocutory appeal for lack of jurisdiction, where the trial court has not entered a final, appealable order.

¶ 23    Appeal dismissed.